585 So.2d 643 (1991)
ORLEANS PARISH SCHOOL BOARD
v.
CITY OF NEW ORLEANS.
Rose M. BREHM
v.
CITY OF NEW ORLEANS and State of Louisiana.
Nos. 91-CA-0116, 91-CA-0117.
Court of Appeal of Louisiana, Fourth Circuit.
August 29, 1991.
Writ Denied November 22, 1991.
*644 Frank P. Tranchina, Jr., Sharon L. Andrews, New Orleans, Bernard M. Plaia, Jr., Metairie, for plaintiff/appellee.
John R. Flowers, Jr., Rodney J. Lacoste, Jr., Stassi, Rausch & Giordano, Metairie, for appellant, State of La. Dept. of Transp. and Development.
Before SCHOTT, C.J., and BARRY and CIACCIO, JJ.
BARRY, Judge.
The State Department of Transportation appeals a judgment which finds it fifty percent (50%) at fault due to an alleged street defect which caused injuries to the plaintiff, Rose Brehm.
Mrs. Brehm fell while crossing General Meyer Ave. and sued the City of New Orleans and the State based on negligence and strict liability. The State stipulated that it owned and had the responsibility to maintain this street. The City filed an exception of no right of action which was continued indefinitely. The City did not participate in the trial. The trial court did not dismiss the City in its judgment. The exception is hereby granted and the City is dismissed with prejudice.
The Orleans Parish School Board filed a subrogation petition for reimbursement of benefits. The cases were consolidated and a bifurcated bench trial was held on the issue of liability.
*645 The trial court found DOTD and Mrs. Brehm each 50% at fault. DOTD submits that the condition of the street did not pose an unreasonable risk of harm and testimony as to subsequent repairs should not have been allowed.

FACTS
Rose Brehm, 32-years-old, testified that she worked for two years at Adolph Meyer's annex school which is opposite from the main school building on Gen. Meyer Ave. Mrs. Brehm walked across Gen. Meyer 5 or 6 times a day. There were designated crosswalks at each corner of Gen. Meyer (at Behrman St. and Numa St.) and a traffic light at Behrman St. However, it was customary for school personnel to take a shortcut by crossing in the middle of the block.
Mrs. Brehm said she was never admonished about using the shortcut. She used a crosswalk when escorting a number of students, otherwise she took the shortcut.
On September 22, 1982 about 2:30 p.m. the school's principal asked Mrs. Brehm to report to her office in the main building. The afternoon was sunny and traffic was heavy. Mrs. Brehm walked to the shortcut, checked the traffic flow and walked at a "[n]ormal pace" toward the neutral ground. She pointed out her route on a diagram which is in the record. Mrs. Brehm fell in the street, got up and continued across. Mrs. Brehm noticed "[t]here was a crack in the street" about twelve inches long and four or five inches wide. She claimed that the front of her foot fit into the opening. She did not see the crack prior to the accident. She conceded that she was looking forward and at the traffic, not down toward the street. She stated the photos (in evidence) represent a crack similar to the one in question. The photos do not depict the accident scene.
Mrs. Brehm informed the principal about the accident. The first report of her injury was made on January 3, 1983, more than three months later. The principal's memo states that "Mrs. Brehm stepped into a hole on the neutral ground causing her to fall."
During cross-examination Mrs. Brehm stated that the shortcut was used for convenience because the corner crosswalks were a half block away. She never noticed the crack before the accident; however, she answered affirmatively when asked if she "had a bad habit of not watching" where she was going. She admitted she was more concerned about the traffic than the condition of the street. She said she could have stepped over the crack or walked around it. Mrs. Brehm testified that she was "in a bit of a hurry" and "quick stepped." She conceded it was safer to cross at the crosswalk, yet after she returned to work she continued to use the shortcut.
Betty Bowers, Mrs. Brehm's co-worker and friend, used the shortcut 9 to 11 times a day. Mrs. Bowers said traffic was usually heavy but school personnel were never told to use the corner crosswalks.
Mrs. Bowers was aware of the crack prior to Mrs. Brehm's fall. She described the opening as about twelve inches long and deep enough for the front of a foot to fit inside. She said the two photos in evidence depict the street's condition in September, 1982. According to Mrs. Bowers, cracks were visible during the prior school term, but "not as bad." She could not recall whether the crack existed during the prior year and she was not aware of any complaint to the State about the alleged defect.
On cross-examination Mrs. Bowers was asked whether the defect could be seen from the curb. She answered: "Not too much, no, unless you looked down...." She said it was "a little" visible, but she always walked around it. On redirect Mrs. Bowers admitted that the crack was "fairly obvious." On recross she said the crack was not hidden. In response to a question from the court, Mrs. Bowers said the crack had been there "a year or so" and she observed it toward the end of the prior school year.
Robert Brehm, Mrs. Brehm's husband, testified that he placed his hand in the crack and it varied in depth from two to six *646 inches. He attempted to classify the crack as "very dangerous", but the response was stricken pursuant to an objection.
No expert observed the crack, located it, measured it, or testified as to whether the crack created an unreasonably dangerous condition.

ARGUMENT AND LAW
DOTD argues that the crack did not pose an unreasonable risk of injury to a person who exercises ordinary care. The trial court did not specifically determine that the street had a defect and stated:
On September 22, 1982, plaintiff Rose Brehm was crossing General Meyer Avenue and stepped into a hole in the street, fell and was injured. Plaintiff fell during daylight hours on a sunny day; the hole which caused her fall was visible. However, her attention was directed to the traffic in the area, rather than to the surface on which she was walking. Plaintiff's attention was directed to traffic because she was jaywalking instead of using the crosswalk at either end of the block of General Meyer. Consequently, this Court finds plaintiff fifty percent at fault for causing her own injury.
In a negligence claim under La.C.C. Art. 2315 against the owner of a thing which causes injury, the injured party must prove that the thing created an unreasonable risk of injury that resulted in damage, that the owner knew or should have known of the risk and failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982).
Under strict liability pursuant to La. C.C. Art. 2317, the injured party must prove that the thing which caused the damage was in the custody of the defendant, that the thing had a defect or vice (that is, that it occasioned an unreasonable risk of harm or injury), and that the injury was caused by the defect.[1]Loescher v. Parr, 324 So.2d 441 (La.1975); Bell v. State of Louisiana, 553 So.2d 902 (La.App. 4th Cir. 1989).
The difference between the two theories is that under strict liability the claimant is relieved of proving that the owner knew or should have known of the unreasonable risk of injury. While the basis for determining the existence of the duty is different in strict liability and negligence cases, the duty which arises is the same. Marziale v. Maney, 529 So.2d 504 (La.App. 4th Cir.1988), writ denied 533 So.2d 22 (La.1988).
Under either theory the claimant must prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage, or stated another way, that the thing was defective. Kent v. Gulf States Utilities Company, 418 So.2d at 493; Marziale v. Maney, 529 So.2d at 504.
Every imperfection or crack in a street is not a legal defect. The claimant must prove that under the circumstances there was an unreasonable risk of harm which resulted in the damage. Kent v. Gulf States Utilities Company, 418 So.2d at 493; Marziale v. Maney, 529 So.2d at 504. The unreasonable risk of harm criterion is not a simple rule of law which can be applied mechanically. It requires a balancing of claims and interests, a weighing of the risk and the gravity of the harm, and a consideration of individual and society's rights and obligations. Landry v. State, 495 So.2d 1284 (La.1986), quoting Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983).
To determine whether a risk is unreasonable, the court must balance the probability and magnitude of the risk against the utility of the thing. Hunt v. City Stores, 387 So.2d 585 (La.1980). The probability of harm plus the gravity of the harm which may ensue must be balanced against the utility of the thing and its condition on the day of the accident. Bell v. State of Louisiana, 553 So.2d at 902.
The fact that a pedestrian falls in the street does not mean that the street's *647 condition amounts to an unreasonably dangerous defect. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981). In order to qualify as a defect, the imperfection or crack in the street must constitute a dangerous condition or pose an unreasonable risk of injury to a prudent person who exercises ordinary care under the circumstances. A pedestrian has a duty to see that which should be seen in order to determine whether his path is clear. Williams v. Orleans Parish School Board, 541 So.2d 228 (La.App. 4th Cir.1989); Hines v. Department of Transportation and Development, 503 So.2d 724 (La.App. 3rd Cir.1987), writ denied 505 So.2d 1151 (La.1987); Varnado v. Sanders, 477 So.2d 1205 (La.App. 1st Cir.1985), writs denied 481 So.2d 630 (La.1986). See also Montgomery v. City of New Orleans, 537 So.2d 1230 (La.App. 4th Cir.1989).
The location of the street, the victim's familiarity with the area, the size and nature of the hole or imperfection, and the victim's use of ordinary care must be considered. See Clairmont v. City of New Orleans, 492 So.2d 1247 (La.App. 4th Cir. 1986), writ denied 496 So.2d 1048 (La. 1986); Carr v. City of Covington, 477 So.2d 1202 (La.App. 1st Cir.1985), writ denied 481 So.2d 631 (La.1986). Each case is determined by its own circumstances.
As a reviewing court we must give great weight to the factual conclusions of the trial court or trier of fact. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The reviewing court shall reverse if the trial court's findings are manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). However, when an appellate court finds the trial court was clearly wrong or manifestly erroneous, it must reverse the judgment and redetermine the facts. Manifest error is found if the reviewing court has a "definite and firm conviction that a mistake has been committed." Shroyer v. Grush, 555 So.2d 534, 538 (La.App. 4th Cir.1989), writ denied 559 So.2d 139 and 140 (La.1990), quoting McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954).

ANALYSIS
We conclude that Mrs. Brehm did not carry her burden of proof that the crack in the street created an unreasonable risk of harm. The crack was estimated to be about twelve inches long, four or five inches wide, and two to six inches deep, according to Mrs. Brehm and her husband. No one measured the crack and no expert testified. Mrs. Brehm regularly jaywalked between the nearby crosswalks. The crack was not hidden and was easily discoverable. Mrs. Brehm's co-worker, Mrs. Bowers, noticed the crack during the prior school year and avoided it on a daily basis.
The State has thousands of miles of roadways which have great utility value and are vital to the public. The cost to repair every pothole or minor crack would be outrageously high. The probability and gravity of harm posed by the alleged defect in this matter is insignificant.
We are convinced that the crack in Gen. Meyer Ave. did not pose an unreasonable risk of harm to Mrs. Brehm or any other pedestrian. She elected to jaywalk every day and should have noticed the street's condition. Mrs. Brehm failed to use ordinary care and is solely responsible for her fall.
The trial court manifestly erred by finding the State liable. We pretermit DOTD's other argument.
The judgment is reversed.
REVERSED.
NOTES
[1] The accident in 1982 pre-dates La.R.S. 9:2800 which limits strict liability against a public entity to damages for defects of which DOTD had actual or constructive notice and a reasonable opportunity to remedy.