842 So.2d 420 (2003)
Neomi JOSEPH
v.
CITY OF NEW ORLEANS.
No. 2002-CA-1996.
Court of Appeal of Louisiana, Fourth Circuit.
March 5, 2003.
*421 John B. Perry, Slidell, LA, for Plaintiff/Appellee.
Charles L. Rice, City Attorney, Albert A. Thibodeaux, Chief Deputy of Litigation, John E. Smith, Deputy City Attorney, Frank B. Hayne, III, Assistant City Attorney, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY).
PATRICIA RIVET MURRAY, Judge.
This is a personal injury suit arising out of a trip and fall on a sidewalk. The trial court found in favor of the plaintiff, Neomi Joseph, and against the defendant, the City of New Orleans, and awarded $50,000 in general damages and $1,319 in special damages. From that judgment the City appeals. Answering the appeal, Ms. Joseph seeks an increase in quantum. For the reasons that follow, we affirm the trial court's findings on liability and quantum, *422 but reverse the trial court's finding that Ms. Joseph was free from fault.

FACTS
On December 14, 1999, Ms. Joseph, aged seventy-four, tripped and fell on an uneven portion of the sidewalk in the 2600 block of Napoleon Avenue in the City of New Orleans. At the spot where she fell, there was a mis-union of two concrete sidewalk slabs, creating a step-up of between 3.5 to 3.9 inches on the street side of the sidewalk. This condition was apparently caused by the roots of an adjacent tree. At the time of the accident, Ms. Joseph was en route to an appointment with her cancer doctor, Dr. Victor Tedesco, whose office is located at 2633 Napoleon Avenue. In the past, a family member had taken Ms. Joseph to the doctor's office; the family members had always dropped her off in the circular drive located in front of the doctor's office. On the day of the accident, however, she rode the bus to the doctor's office; the bus dropped her off across the street from the office nearby an adjacent hospital. As a result, that day she had to cross Napoleon Avenue to get to the doctor's office. After she crossed the street and began walking on the sidewalk towards the office, she tripped and fell on the uneven sidewalk. Shortly thereafter, she was treated at the emergency room of the nearby hospital. She was diagnosed as having sustained a fractured right humerus, which is the top bone in the arm, running from the shoulder to the elbow. Subsequently, she intermittently was treated for her injury by Dr. J. Lee Moss. This suit followed against the City and the Sewerage and Water Board.
At trial, the parties stipulated that the City owned the sidewalk where Ms. Joseph fell and that no other entity had responsibility for the upkeep, maintenance, or repair of the sidewalk. As a result of this stipulation, the Sewerage and Water Board was dismissed. The parties also stipulated that Ms. Jackson's special damages from Memorial Medical Center emergency room and Southern Orthopaedic Specialists (Dr. Moss) totaled $1,319. The evidence presented at the bench trial included testimony by Ms. Joseph; Ms. Joseph's son, Reverend Lawrence Brown; several engineering experts; and a city employee. Several photographs of the sidewalk were also introduced into evidence.
Finding in Ms. Joseph's favor, the trial court determined that the sidewalk was defective, that the City had knowledge of the defect, and that the City's negligence in failing to correct the defect within a reasonable time was the cause of Ms. Joseph's injuries.
On appeal, the City assigns four errors by the trial court:
(1) The trial court erred in failing to find that the sole and proximate cause of plaintiff's accident was her looking at the building to which she was going and failing to pay any attention at all to the sidewalk on which she was walking;
(2) The trial court erred in failing to rule that because the sidewalk obstruction was clearly visible to plaintiff and easy for her to step means that it did not constitute an actionable legal "defect";
(3) The trial court erred in ruling that the City had advance constructive notice of the sidewalk condition at issue, simply because that condition had been present for a long period of timedespite the fact that thousands of pedestrians had walked across that location without known incident either actual or constructive, before plaintiff's accident; and despite the presence of thousands of other instances of similar sidewalk *423 conditions throughout the City, the discovery and repair of which would be exceedingly expensive; and
(4) The judgment below, even if proper in holding the City of New Orleans liable, was erroneous in failing to attribute major contributory negligence to plaintiff.
Ms. Joseph answered the City's appeal seeking an increase in quantum from $50,000 to $75,000 in general damages.

DISCUSSION
To prevail on a claim against a public entity, such as the City, based on either negligence or strict liability, a plaintiff must establish the following elements: (1) the entity's custody or ownership of the defective thing; (2) the defect created an unreasonable risk of harm; (3) the entity's actual or constructive notice of the defect and failure to take corrective action within a reasonable time; and (4) causation. See Oster v. Dep't of Transp. & Dev., State of La., 582 So.2d 1285, 1288 (La.1991); La. R.S. 9:2800. The first element is satisfied by the parties' stipulation that the City owned and had custody of the sidewalk where Ms. Joseph was injured. The last element is not at issue since the City did not assign as error the trial court's finding of causation, and the record supports the trial court's finding that Ms. Joseph's shoulder injury was caused by the accident. The issues before us thus can be narrowed to whether the trial court properly found the defect in the sidewalk presented an unreasonable risk of harm, and whether the City had notice of the defect and failed to take corrective action within a reasonable time. We separately address those two issues.

UNREASONABLE RISK OF HARM
The manifest error standard of review applies to the trial court's finding of whether a defect creates an unreasonable risk of harm. Reed v. Wal-Mart Stores, Inc., 97-1174, p. 5 (La.3/4/98), 708 So.2d 362, 365. Articulating the reason for applying the manifest error standard to this determination, the Louisiana Supreme Court stated in Reed:
Because a determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than-scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court. Consequently, the findings of the jury or trial court should be afforded deference and we therefore hold that the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard.
Reed, 97-1174, p. 4, 708 So.2d at 364-65.
In evaluating whether a defect in a sidewalk creates an unreasonable risk of harm a risk-utility balancing test must be employed; to wit, "the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair." Reed, 97-1174 at p. 5, 708 So.2d at 365. Stated otherwise, "[t]he trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others." Id.; Boyle v. Board of Supervisors, Louisiana State University, 96-1158, p. 5 (La.1/14/97), 685 So.2d 1080, 1083.
Stressing that municipalities are not liable for every defect or irregularity in sidewalks that cause injury, the court in Reed noted:
It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party *424 having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for those defects which present an unreasonable risk of harm.
97-1174 at p. 2, 708 So.2d at 363.
In the instant case, the trial court applied the balancing test and determined that the particular defect in the sidewalk was defective under the particular facts of this case, reasoning:
[Ms. Joseph's] engineering expert, Mr. Jim Gilbert testified that the 3 ½"3.9" depression where Mrs. Joseph tripped was grossly defective due to the fact that industry standards set the acceptable variance in height as¼" in a 10' of walking surface; whereas, as reflected in the measurements shown in [the pictures Ms. Joseph introduced], this area had a 3.5" to 3.9" variance in a 5½' of walking surface, well below acceptable engineering standards. Both Mr. John R. Huerkamp, Sewerage and Water Board's engineer and Mr. Marvin Thompson, defendant's expert engineer, concurred that this condition was hazardous, and presented a defect that should have been repaired.
The trial court further found that the there was a reasonable factual basis for finding the depression in the sidewalk where Ms. West fell was "well below industry standards in variance of depths." The trial court still further found that there was a great likelihood of harm given that the condition existed in front of an office that would be frequented on a daily basis by patients. Hence, the court held the variance in depth of the sidewalk was unreasonably dangerous and created an unreasonable risk of harm.
Although the City acknowledges that the sidewalk was abnormal, it argues that the trial court erred in finding it created an unreasonable risk of harm given that Ms. Joseph's failure to see what she should have seen caused the accident. In support, the City cites Alexander v. City of Baton Rouge, 98-1293 (La.App. 1 Cir. 6/25/99), 739 So.2d 262, for the proposition that an open and obvious sidewalk defect, such as the one in this case, does not present a condition creating an unreasonable risk of harm. We find this argument unpersuasive. The open and obvious nature of the sidewalk defect on which Ms. Joseph tripped and fell does not relieve the City from liability.
Explaining the "open and obvious" defense, a commentator states:
Pre-1996, a court might have refused to apply strict liability because the risk at issue was "open and obvious." The same rule applies in negligence cases. While the "open and obvious" argument suggests a disguised application of contributory negligence or assumption of the risk, when the risk is open and obvious to everyone, the probability of injury is low and the risk may be outweighed by the thing's utility. Consequently, when the risk is open and obvious, the thing may not be unreasonably dangerous, or, after the amendments, the defendant may not have failed to exercise reasonable care.
Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 14-3 (1996). Simply stated, the open and obvious nature of the defect is merely another factor to be weighed in the risk-utility balance.
Although we acknowledge the holdings in Boyle and Reed that not every crack in a sidewalk results in liability, we cannot say that the trial court was manifestly *425 erroneous in finding the sidewalk defect at issue in this case, which is over three inches in size, created an unreasonable risk of harm. More precisely, we conclude that the obvious deteriorating condition of the sidewalk was at least a contributing cause of Ms. Joseph's trip and fall. See Hammons v. City of Tallulah, 30,091, p. 6 (La.App. 2 Cir. 12/10/97), 705 So.2d 276, 281.
First, the photographs of the sidewalk in the record reflect its obvious state of disrepair. Second, all the experts agreed that the sidewalk was defective. Jack Huerkemp, Chief of Operations for the Sewerage and Water Board, testified that he would have corrected this defective sidewalk. James G. Gilbert, a civil engineer, testified that this three point five to three point nine inch rise in the sidewalk created a "tripping hazard," which he defined as "a sidewalk that's uneven enough that we think it would cause a potential fall." Finally, Marvin Thompson, a civil engineer employed by the City's Department of Public Works, testified that this is a defective condition in the sidewalk.
Third, Mr. Thompson in addressing the issue of cost of repairs testified regarding the City's procedures:
Q Okay. Now, you said that even if in another case there was a property owner who had to fix the defect but did not do it, then the City would not do it either, even if they knew of the defect; is that correct?
A. The City does not have resources to respond to all these defects, so therefore, we do not fix.
Q. Even if they have actual notice of the defect?
A. Yes. The City could fix the defect and charge the property owner if the funds are available. For many years the funds have not been available to pursue that avenue.
Implicitly referenced in Mr. Thompson's testimony is the statutory right of a municipality set forth in La. R.S. 33:792 and 793 to require the repair of damaged sidewalks by the owner of the land abutting upon such sidewalk, or, in lieu thereof, to repair the sidewalk at such owner's expense. See Hammons, 30,091 at pp. 5-6, 705 So.2d at 281 (noting the significance of these provisions in finding liability on the part of the municipality for a defective sidewalk).
Given this evidence, as stated above, we cannot find the trial court committed manifest error in determining the defect in this sidewalk presented an unreasonable risk of harm.

ACTUAL OR CONSTRUCTIVE NOTICE
The next issue is whether the trial court correctly found the City had notice of the defect. On this issue, the trial court stated in its reasons for judgment that Mr. Gilbert, Ms. Joseph's engineering expert, testified that this dangerous condition existed for a substantial period of time before the accident and estimated that period to be about five to ten years before the accident. Mr. Gilbert based his opinion on the condition of the sidewalk crack, which was shown in a photograph to be significantly weathered. The trial court further noted that Mr. Gilbert compared photographs taken by Ms. Joseph's son, Rev. Brown, in January 2000 with photographs taken by Mr. Huerkamp, the Sewerage and Water Board's engineer, in April 2001. The comparison showed that the condition remained virtually unchanged over that almost two-year period. The court thus found these photographs persuasive in establishing the City had constructive notice. Finally, the court reasoned that based on the expert witnesses' testimony and the photographs introduced at trial, the uneven portion of the sidewalk existed for *426 such a lengthy period of time that the City had constructive notice of the defect before the accident and failed to take appropriate steps to correct the defect.
The City stresses the testimony of its employee regarding the lack of any prior accidents at this location as establishing the lack of any actual notice. The City also stresses the experts' testimony that there are countless similar defects throughout the City. The City contends that the mere fact that this condition existed for a number of years is insufficient to create knowledge by the City of its presence.
Constructive notice is defined by La. R.S. 9:2800 to mean "the existence of facts which infer actual knowledge." La. R.S. 9:2800(C). Constructive notice can be found to exist when "the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury." Maldonado v. Louisiana Superdome Comm'n, 95-2490, p. 7 (La. App. 4 Cir. 1/22/97), 687 So.2d 1087, 1092. The trial court found such to be the case here. The conclusion that the City had constructive notice of the defective sidewalk condition was a factual finding governed by the manifest error standard of review. 95-2490 at p. 9, 687 So.2d at 1093. We find no manifest error in the trial court's conclusion that the City had constructive notice. As discussed above, the record amply supports that finding.

COMPARATIVE FAULT
The City's final assignment of error is that the trial court erred in failing to find that Ms. Joseph's own negligence was the major cause of her injuries. Particularly, the City argues that Mrs. Joseph's failure to watch where she was walking was the primary cause of the accident. The City stresses that the accident occurred on a clear day and that there were no distractions.
Whether comparative fault applies in a given case is a factual determination governed by the manifest error standard of review; hence, "[o]nly if the apportionment of fault is found to be clearly wrong can an appellate court adjust percentages." Maldonado, 95-2490 at p. 10, 687 So.2d at 1093 (citing Clement v. Frey, 95-1119, pp. 7-8 (La.1/16/96), 666 So.2d 607, 610-11). In comparing fault, we apply the oft-cited list of factors enunciated in Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 974 (La.1985); to wit: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) whether the capacities of the actors were superior or inferior; (5) whether any extenuating circumstances required to actor to proceed without proper thought, and (6) the relationship between the actor's conduct and the harm to the plaintiff.
Applying those principles to the evidence presented in this case, we find the trial court's failure to find Ms. Joseph comparatively negligent was manifestly erroneous. The trial court found that "Mrs. Joseph was paying careful attention to where she was going, looking directly at the office building and did not notice the depression reflected in the photograph ... until she had tripped and fell [sic]." As the City correctly contends, the principle that a pedestrian has a duty to see what he or she should have seen applies. Although Ms. Joseph testified that she was unaware of the uneven sidewalk until she tripped and fell, the defective condition was an obvious defect, as reflected in the photographs *427 in the record, that she had a duty to see. While the City was in a superior position to remedy the defective condition, no evidence was presented that there were any extenuating circumstances, such as distractions in the area or a need for haste, that prevented Ms. Joseph from seeing what she should have seen.
Both the City's failure to repair the sidewalk within a reasonable period and Ms. Joseph's failure to see what she should have seen were contributing causes of her injuries. Indeed, as indicated above, our finding that the obviously dilapidated condition of the sidewalk presented an unreasonable risk of harm also establishes some comparative fault on Ms. Joseph's part.
Nevertheless, the City's conduct was significantly greater. The City was in a superior position to address the longstanding defective condition of the sidewalk. That defective condition created a significant risk of harm, especially for an elderly person. The location of that defective condition in the front of a medical office building and across the street from a hospital is also an important factor in determining the significance of the risk. The City's failure to remedy that defect created a risk to all those using the public sidewalk, and its superior position results in its fault being greater.
Applying the Watson factors, we find that the lowest percentage of fault a reasonable fact finder should have allocated to Ms. Joseph under these circumstances was thirty percent. See Jones v. Peyton Place, Inc., 95-0574, pp. 9-11 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 763 (allocating 30% comparative fault for plaintiff's failure to see "open and obvious" defect he should have seen).

QUANTUM
The City does not raise quantum as an issue on appeal. Answering the City's appeal, Ms. Joseph seeks an increase in general damages from the $50,000 the trial court awarded to $75,000. In reviewing a general damage award, the first inquiry is "whether the particular effects of the particular injuries to the particular plaintiff are such that there has been an abuse of the `much discretion' vested in the judge or jury." 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 14.14 (1999). The standard of review for abuse of discretion in awarding general damages is "difficult to express and is necessarily non-specific." Cone v. National Emergency Services, Inc., 99-0934, p. 8 (La.10/29/99), 747 So.2d 1085, 1089. The seminal case on that standard is Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), in which the court articulated it as follows: "the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." 623 So.2d at 1261. This is not such a rare case.
In reviewing the trial court's award of general damages in this case, we note, as the trial court stated, that the injury Ms. Joseph sustained to her right shoulder continued to be an ongoing problem. Both Ms. Joseph and her son, Rev. Brown, testified that her injury presented ongoing problems in taking care of her husband and in handling her own personal needs. The record thus supports the trial court's award of $50,000 in general damages. Applying the Youn standard, we find the trial court's general damage award in this case is not an abuse of discretion. We thus find it unnecessary to resort to a review of damage awards made in other cases. Ms. Joseph's argument that this amount is inadequate unpersuasive.

DECREE
For the foregoing reasons, we reverse the trial court judgment insofar as it found *428 no fault on Ms. Joseph's part, reduce the trial court's award of damages by the thirty percent fault we assign to Ms. Joseph, and in all other respects affirm the judgment of the trial court.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.