WALTER J. ROTHSCHILD, Judge.
 

 |2Following a bench trial in this slip and fall case, the trial court rendered judgment in favor of plaintiff, Claudia Washington and against Consolidated Water Works District No. 1 of the Parish of Jefferson. Both parties now appeal. We affirm.
 

 Facts and Procedural History
 

 On August 29, 2002, Claudia Washington filed the instant petition for damages against Consolidated Water Works District No. 1 of the Parish of Jefferson (“Water Works”) and Consolidated Sewerage District No. 1 of the Parish of Jefferson (“Sewerage”) alleging that on September 15, 2001 she slipped in standing water and fell while attempting to place mail into her mailbox. She alleges that the accumulated water was a longstanding problem and that she reported it to the Sewerage and Water Board several times in the six week period before her injury but nothing was done to remedy the situation. She alleges that defendants were negligent in creating |sthe hazard and in failing to correct it. Defendants answered the petition, alleging that they had no notice of the alleged defect and that the accident was a result of plaintiff’s own negligence.
 

 Trial of this matter was held on September 30, 2008 and the parties stipulated to the photographs of the accident area, plaintiffs medical bills and the work orders from the Sewerage and Water Board. Plaintiff testified at trial that on September 15, 2001, she walked to the mailbox in front of her house and fell into a hole containing muddy water which was in front of the mailbox. She testified that the water had been accumulating in this area since July of 2001, and that she could not get to her mailbox without encountering it. She stated that she tried to avoid it by waiting for the mailman to hand him mail
 
 *290
 
 directly, but on this particular day she missed him and needed to walk to the box.
 

 Plaintiff testified that she called the Sewerage and Water Board several times using the number located on her bill to report this problem. She stated that she called once or twice a week and was told she was placed on a waiting list. Her son also called to report the problem. At some point, a workman from the sewerage department inspected the site and determined that it was a broken water pipe for which the sewerage department was not responsible. Approximately six weeks later, and after her fall, the water department came out and repaired the problem.
 

 Plaintiff testified that on the day of this incident, she fell into a split, and a friend called for an ambulance. She did not go to the hospital at that time because she was wet and muddy and also dizzy. She went inside to bed, and continued to have pain during the night. She went to the hospital emergency room the following day.
 

 |4Plaintiff testified that after she left the hospital, she saw Dr. Volek, a chiropractor and was treated over the course of two years with heat therapy, traction and simulation. Plaintiff did not feel her condition was improving and she continued to go to the emergency room for pain. In December of 2001 she saw Dr. Kessler, who prescribed an MRI and physical therapy. Plaintiff testified that she told Dr. Kessler that she was injured in a fall, and that although she previously had back pain, the pain she experienced following the fall was constant and much worse. She stated that Dr. Kessler referred her to a neurologist, but she was unable to afford these charges and instead saw a physician at Charity Hospital. She had a second MRI and a nerve conduction test at Charity, and was given a prescription for a motorized wheelchair. At the time of trial, plaintiff continued to receive treatment within the Charity system.
 

 Plaintiff testified that there were many activities she could not perform after the fall, including gardening and housecleaning. Plaintiff admitted that she had problems with her back prior to this fall, but she was no longer having any symptoms at the time of the fall in this case. She explained that the previous back problems were due to an issue with her bladder, rather than an orthopedic injury.
 

 Plaintiff also submitted the testimony of Randy Shuler, the director of the Jefferson Parish Water Board, who identified a work order for plaintiffs property dated September 4, 2001. The Sewerage Department determined on that date that the problem involved the Water Department, and the work order was referred to Water on September 5, 2001. No barriers were placed around the mailbox at this time. The Water Board records indicate that the problem was repaired on September 24, 2001.
 

 |5Puring the presentation of their case, defendant also presented Mr. Shuler’s testimony. Mr. Shuler testified that due to a severe drought, the Sewerage and Water Board received a much larger volume of reports of broken water lines during the summer of 2001. They made the decision to prioritize and repair the most dangerous problems first. Mr. Shuler confirmed that the work order for plaintiffs property was completed within a 20 day period, which he believed to be reasonable under the busy conditions. He stated that based on the amount of work orders received during the time period, it would not have been reasonable for plaintiffs repair to be completed within 11 days, or from the date the order was received until the date of plaintiffs fall. He stated that the department could not have repaired the problem any sooner than it did.
 

 
 *291
 
 Defendant also submitted the video deposition of Dr. Melvin Parnell who performed an IME on plaintiff. Defendant moved for an involuntary dismissal of defendant Consolidated Sewerage District No. 1 of the Parish of Jefferson, as there was no evidence of negligence on the part of this defendant. The trial court granted this motion and took the matter against Water Works under advisement.
 

 On December 1, 2008, the trial court rendered judgment in favor of plaintiff and against Consolidated Water Works Dist. No. 1 in the amount of $89,000.00 in general damages and $10,557.11 in special damages. The trial court also issued reasons for judgment finding that defendant had a reasonable opportunity to remedy the problem prior to plaintiffs injury, and was negligent in failing to do so. Defendant suspensively appeals from this judgment on the basis of several assignments of error. Plaintiff, in proper | (¡person, also filed an appeal from this judgment and her trial attorney has filed an amicus brief in this matter.
 

 By its appeal, defendant contends that the trial court erred in finding the area of the fall presented an unreasonably dangerous condition and that defendant had a reasonable opportunity to repair this condition prior to the fall. Further, defendant contends that the trial court erred in failing to assess comparative fault to plaintiff in this matter and in awarding excessive damages to plaintiff.
 

 Plaintiffs claims fall under either a theory of negligence pursuant to La. C.C. art. 2315 or strict liability pursuant to La. C.C. art. 2317. At all pertinent times herein, La. C.C. art. 2317.1 provided:
 

 The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
 

 In
 
 Leonard v. Parish of Jefferson,
 
 05-32, p. 4 (La.App. 5th Cir.4/26/05), 902 So.2d 502, 504 we noted this article effectively turns strict liability into negligence claims, citing
 
 Reitzell v. Pecanland Mall Associates, Ltd.,
 
 37,524, p. 3 (La.App. 2nd Cir.8/20/03), 852 So.2d 1229, 1232.
 

 Thus, to prevail on a claim against a public entity for negligence or strict liability, a plaintiff must establish: (1) the entity’s custody or ownership of the defective thing; (2) the defect created an unreasonable risk of harm; (3) the entity’s actual or constructive notice of the defect; and (4) causation.
 
 Butkiewicz v. Evans,
 
 06-236, pp. 5-6 (La.App. 5 Cir. 9/26/06), 943 So.2d 509, 512. See also,
 
 Oster v. Dep’t of Transp. & Dev., State of La.,
 
 582 So.2d 1285, 1288 (La.1991); La. R.S. 9:2800;
 
 Joseph v. City of New Orleans,
 
 02-1996, p. 3 (La.App. 4th Cir.3/5/03), 842 So.2d 420, 423.
 

 The manifest error standard of review applies to the trial court’s finding of whether a defect creates an unreasonable risk of harm.
 
 Reed v. Wal-Mart Stores, Inc.,
 
 97-1174, p. 5 (La.3/4/98), 708 So.2d 362, 365;
 
 Joseph,
 
 02-1996 at p. 4, 842 So.2d at 423.
 

 In determining whether a defect creates an unreasonable risk of harm, the courts use a risk-utility balancing test in which the gravity and risk of harm is balanced against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair.
 
 *292
 

 Leonard,
 
 05-32 at p. 5, 902 So.2d at 504;
 
 Joseph,
 
 02-1996 at p. 4, 842 So.2d at 423, citing
 
 Reitzell,
 
 37,524 at pp. 3-4, 852 So.2d at 1232. See also,
 
 Boyle v. Board of Supervisors, Louisiana State University,
 
 96-1158, p. 5 (La.1/14/97), 685 So.2d 1080, 1083.
 

 In the present case, plaintiff gave descriptive testimony of the area surrounding her mailbox. She stated that there was “messy water” 3-4 feet around the mailbox for a period of several months, and there was no way to access the box without encountering it. She also described it as slippery and that when she fell she felt as if she had roller skates on. She also introduced photographs of the area which confirm her description. Plaintiff further stated that she attempted to avoid the area by waiting on her porch for the mailman to arrive, but she did not see him on the day of the incident. Although plaintiff stated she was aware of the severity of the condition, she stated it was necessary to go to the mailbox on the date of her fall to mail bills.
 

 | ^Defendant contends that while standing water may be deemed to be a defect, the record fails to prove the condition rose to the level of being unreasonably dangerous. Generally a defendant has no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff. In a slip and fall case, a pedestrian has a duty to see that which should be seen and is bound to observe whether the pathway is clear.
 
 Jeansonne v. South Cent. Bell Telephone Co.,
 
 08-568, p. 9 (La.App. 5 Cir. 1/13/09), 8 So.3d 613, 619.
 

 In the present case, plaintiff admitted that she was aware of the obvious condition of the area and normally tried to avoid it, but found it necessary to access her mailbox on the date in question. She testified that she attempted to walk on the dry area, but that her feet slipped very quickly causing her to fall. Further, the photographs of the area depict an unreasonably dangerous condition, i.e., one which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Under the circumstances presented here, we find no manifest error of the trial court’s determination that the area presented an unreasonable risk of harm that defendant had a duty to repair.
 

 We likewise find no manifest error in the trial court’s failure to assess comparative fault to the plaintiff. Plaintiff testified that she tried to avoid walking near the mailbox due to the condition surrounding it, and that she tried to avoid stepping in the water on the day of the accident. The record indicates that plaintiff proceeded carefully and as an ordinary prudent person |9on the date of the accident, and the record does not support a finding of comparative fault on her part.
 

 Defendant next argues that the trial court erred in finding that defendant had a reasonable opportunity to remedy this defect prior to plaintiffs fall. Defendant cites La. R.S. 9:2800(C) which requires plaintiff to prove the public entity had a reasonable opportunity to remedy the defect but failed to do so. In support of its argument, defendant relies on the work order generated by plaintiffs complaint dated September 4, 2001 and the evidence that the problem was repaired on September 24, 2001, approximately 20 days later. Defendant also relies on the testimony of Randy Shuler regarding the especially high volume of calls regarding water pipe problems during the period in question.
 

 
 *293
 
 The trial court in this case made a factual determination that defendant had a reasonable opportunity to repair the defect prior to plaintiffs fall. The trial court relied on Louisiana case law presented by plaintiff which supported a finding that 20 days is more than a reasonable amount of time for a defect to be repaired by a public entity. The trial court also noted that defendant failed to present any case law that supported its position that there was no reasonable opportunity to remedy the defect. Apparently, the trial court failed to credit the testimony of Mr. Shuler that the Parish needed additional time due to an increased work load at the time. These factual findings are within the discretion of the trial court and will not be disturbed absent manifest error.
 

 With regard to damages, we find no merit in defendant’s argument that the damage award was excessive or that plaintiff was awarded medical expenses for treatment that was unrelated to the accident in this case. ImAlthough the trial court found that plaintiff had a pre-exist-ing back problem, the court found that these problems were exacerbated by the fall in this case The trial court also found plaintiff received treatment for this injury for a period of approximately 18 months. This finding is supported by the medical evidence presented at trial. All of the medical experts, including defendant’s expert, opined that plaintiffs fall could have exacerbated her pre-existing back problems. In fact, Dr. Macaluso, plaintiffs general practitioner, found evidence of nerve irritation in plaintiffs back which was not present prior to the fall.
 

 Thus, although defendant argues that plaintiffs credibility with regard to her previous injuries was called into doubt, the trial court took her previous injuries into consideration when rendering the award of damages. Further, the medical evidence supports the court’s findings that plaintiffs condition was worsened by the fall, and we find that the court’s findings regarding the length of treatment is reasonably supported by the record.
 

 Further, defendant contends the general damage award is excessive when compared to similar awards for soft tissue injuries. However, the record in this case indicates that plaintiff suffered nerve irritation and disc involvement which were medically related to the fall in this case. Under these circumstances, we fail to find that the trial court’s award of $39,000.00 in general damages is an abuse of the trial court’s much discretion.
 

 Finally, although the record shows that plaintiff has devolutively appealed from the court’s judgment, a review of the briefs filed in this Court fail to articulate the error on which her appeal is based. Absent a statement of an assignment of error or a brief of same, we are unable to consider plaintiffs appeal from the trial court’s ruling.
 

 11TAccordingly, for the reasons assigned herein, the judgment of the trial court is affirmed. Defendant is to bear all costs of this appeal.
 

 AFFIRMED.