CHARLES R. JONES, Judge.
 

 hThe Appellant, the City of New Orleans (“the City”), seeks review of a judgment of the district court finding the City liable for damages arising out of a trip and fall accident and awarding Appellee, Diana Murphy damages. Concluding that the district court did not err, we affirm the judgment of the district court.
 

 The material facts are not in dispute. The instant matter arises out of a trip and fall incident that occurred as Mrs. Murphy jaywalked across Decatur St. between the 600 and 601 blocks in Orleans Parish. While crossing Decatur St. and looking out for oncoming vehicles, she tripped over a mound of pushed up asphalt and injured her right knee and leg, sustaining a tiblial plateau fracture, which required her to undergo two surgeries and physical therapy-
 
 [1]
 

 Alleging strict liability and negligence on the part of the City of New Orleans, Mrs. Murphy filed suit in September of 2001 with her husband, John Murphy, Jr., who filed a claim for loss of consortium. Mrs. Murphy prevailed at 12trial with the district court finding that the City was 100% liable for the accident. The court rendered judgment in the amount of one million one hundred thirty-six thousand five hundred ninety-seven dollars and ninety-nine cents ($1,136,597.99). However, in its Reasons for Judgment, the district court stated that it was awarding damages as follows:
 

 Past Medical Expenses: $314,302.66
 

 Future Medical Expenses: $ 15,000.00
 

 Past Wage Loss: $169,871.33
 

 General Damages (capped): $500,000.00
 

 Total Damages: $999,173.99
 

 The district court would have awarded Mrs. Murphy $700,000.00 in general damages, but statutorily capped her award at $500,000.00 under La. R.S. 13:5106(B), which limits a claimant’s general damages award to a maximum of $500,000.00 in a lawsuit against a political subdivision.
 

 Furthermore, we note that the Judgment of the district court states that Mrs. Murphy was awarded $1,136,597.99 in damages, but the amount contained in the Reasons for Judgment, computed above, is $999,173.99. We find that the amount contained in the Reasons for Judgment is the correct total damage award because the court explains how it computed this award therein.
 

 The district court awarded Mrs. Murphy legal interest on her award from September 14, 2001, through the date of judgment at the rate of six percent (6%) per annum, and assessed all costs against the City. The district court further awarded post-judgment interest on all amounts awarded, including costs’, at the legal rate. Lastly, Mr. Murphy’s claim was dismissed as moot because Mrs. Murphy’s $500,000.00 general damage award exhausted the available general damages that could be awarded against a political subdivision under La. R.S. 13:5106(B).
 

 |sThe City of New Orleans timely filed a motion for appeal, and raises two assignments of error:
 

 
 *959
 
 1.) the district court erred in finding that the Murphys carried their burden of proof on each element as required in finding negligence or strict liability against a public entity as set forth in La. R.S. 9:2800, and
 

 2.) the district court erred in failing to find any comparative fault on the part of Mrs. Murphy.
 

 A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.”
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). Under the manifest error standard of review, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.
 
 Stobart v. State through DOTD,
 
 617 So.2d 880, 882 (La.1993). Moreover, where two permissible views of the evidence exist, the factfin-der’s choice between them cannot be clearly wrong.
 
 Id.
 
 In the instant case, we find that the district court’s findings are reasonable in light of the record.
 

 In the first assignment of error raised by the City, it asserts that the district court erred in finding that the Mrs. Murphy carried her burden of proof on each element as required in finding negligence or strict liability against a public entity as set forth in La. R.S. 9:2800. There are four (4) elements that a plaintiff must establish to prevail on a negligence or strict liability claim against a public entity: |41.) the City’s custody or ownership of the defective thing; 2.) the defect created the unreasonable risk of harm; 3.) the City’s actual or constructive notice of the defect and failure to take corrective action within a reasonable time; and 4.) causation.
 
 Joseph v. City of New Orleans,
 
 02-1996, p. 3 (La.App. 4 Cir. 3/5/03), 842 So.2d 420, 423
 
 (citing Oster v. Dep’t of Transp. and Dev., State of La.,
 
 582 So.2d 1285, 1288 (La.1991); La. R.S. 9:2800). However, the arguments that the City offers in support of this assignment of error reveal that it is only addressing two of the four factors listed in
 
 Joseph:
 
 1.) the alleged defect did not create an unreasonable risk of harm, and 2.) the City did not have actual or constructive notice of the defect.
 

 The City first asserts that the push up at issue did not create an unreasonable risk of harm to Mrs. Murphy because it was obviously visible to a pedestrian exercising reasonable care.
 
 [2]
 
 The City contends that the legal precedents set forth by the Louisiana Supreme Court and this court in
 
 White v. Alexandria,
 
 216 La. 308, 43 So.2d 618, 620 (1949) and
 
 Orleans Parish School Bd. v. City of New Orleans,
 
 585 So.2d 643, 646 (La.App. 4 Cir. 8/29/91), respectively, further establish that the defect at issue did not create an unreasonable risk of harm. The
 
 White
 
 case is factually distinguishable from the instant matter because it involves a plaintiff who was injured on a sidewalk as opposed to addressing a plaintiff crossing a major street while avoiding oncoming vehicles; therefore, we focus our discussion of this assignment of error by reviewing our analysis of unreasonable harm in
 
 Orleans Parish School Bd.
 

 |fiIn
 
 Orleans Parish School Bd.,
 
 we explained that in order to qualify as a defect, the imperfection or crack in the street must constitute a dangerous condition or pose an unreasonable risk of injury to a prudent person who exercises ordinary care under the circumstances.
 
 Id.
 
 at 647. To determine whether a risk is un
 
 *960
 
 reasonable, the court must balance the probability and magnitude of the risk against the utility of the thing.
 
 Id.
 
 at 646
 
 (citing Hunt v. City Stores,
 
 387 So.2d 585 (La.1980)). Additionally, determining whether a defect involves an unreasonable risk of harm requires a balancing of claims and interests, a weighing of the risk and the gravity of the harm, and a consideration of individual and society’s rights and obligations.
 
 Id. (citing Landry v. State,
 
 495 So.2d 1284 (La.1986),
 
 quoting Entrevia v. Hood,
 
 427 So.2d 1146, 1149 (La.1983)). The location of the street, the victim’s familiarity with the area, the size and nature of the hole or imperfection, and the victim’s use of ordinary care must be considered in every case.
 
 Id.
 
 at 647.
 
 See Clairmont v. City of New Orleans,
 
 492 So.2d 1247 (La.App. 4th Cir.1986),
 
 writ denied
 
 496 So.2d 1048 (La.1986);
 
 Carr v. City of Covington, 477
 
 So.2d 1202 (La.App. 1st Cir.1985),
 
 writ denied
 
 481 So.2d 631 (La.1986).
 

 In
 
 Orleans Parish School Bd.,
 
 a pedestrian jaywalking across a street injured herself when she slipped and fell on a crack in the street. 585 So.2d at 645. The plaintiff testified that she habitually jaywalked across this particular street as a shortcut, but had never noticed the crack before the accident.
 
 Id.
 
 The plaintiff sued the City and the State based on negligence and strict liability. While the district court determined that the plaintiff was 50 at fault for the accident, this court | ^reversed finding that the plaintiff failed to show that the crack in the street created an unreasonable risk of harm because she was familiar with the area where the defect was located, and the defect was easily discoverable and noticeable enough for others to avoid.
 
 Id.
 

 In the instant case, there is not an exact measurement of the defect at issue, but the district court observed that the asphalt push up measured several inches at its peak and that it was located away from the curb in the traveled portion of the street. Mrs. Murphy, a tourist, traversed Decatur St., a major street in the French Quarter — a main attraction in Orleans Parish for tourists who tend to be pedestrians in that area. She had zero familiarity with Decatur St. because she was a tourist. Furthermore, she crossed Decatur St. outside of the crosswalk located between 600 and 601 Decatur St., according to her testimony and the exhibits introduced at trial. Mrs. Murphy exercised ordinary care in examining the condition of Decatur St. before she attempted to cross the street. In balancing the probability and magnitude of the risk of harm against the utility of the thing, the risk of harm is great to tourists and other pedestrians who often wander out into the street and encounter such push ups, which have no utility other than providing a rougher surface for cars and potential pedestrians to travel. As discussed below, the City, through its Department of Public Works, designated Decatur St. as a major city street and required annual visual inspections under the City’s Streets Maintenance Manual, but the City failed to conduct the inspections. The City had 17an obligation that it failed to uphold. We are precluded from finding that the district court committed manifest error under the unique circumstances presented.
 

 The City’s second argument — under the first assignment of error — is that because it does not have an independent duty to inspect city property, it, therefore, did not have constructive notice of the alleged defect and cannot be held to be liable for Mrs. Murphy’s fall. Constructive notice is defined by La. R.S. 9:2800(C) to mean “the existence of facts which infer actual knowledge.” The City maintains that it is made aware of defects in its roadways only when complaints are lodged
 
 *961
 
 via telephone or from people walking-in. The City asserts that it does not have a policy on the routine inspection, assessment, structural capacity evaluation or budgeting for specific maintenance problems of the streets within the City. Yet, the district court determined that the City did have such a policy in effect. We agree with this finding.
 

 A party may have constructive knowledge of a dangerous condition if it has a policy of actively preventing the dangerous condition from occurring.
 
 Pitre v. Louisiana Tech Univ.,
 
 673 So.2d 585, 593-95. There is no independent duty to inspect city property, and therefore, the City’s failure to do so, does not impute to the City constructive knowledge of defects in its streets.
 
 Jones v. Hawkins,
 
 98-1259, p. 7 (La.3/19/99), 731 So.2d 216, 220.
 

 The district court decided that the City Streets Manual authored by Mr. Marvin Thompson, the Principal Engineer for the Department of Public Works for the City of New Orleans, reflected that routine field inspections, assessments, and [8structural capacity evaluations were required of the City, but were not performed by the City for at least six years prior to Mrs. Murphy’s accident. In conjunction with Mr. Thompson’s City Streets Manual, the district court assessed the requirements of the Streets Maintenance Manual, a manual which the Department of Public Works (the “DPW”)
 
 is
 
 bound to follow. The City Streets Manual requires the DPW to conduct a visual inspection of the conditions of major streets, which includes Decatur St., annually. Additionally, the district court found that other field inspections and street maintenance requirements mandated by the Streets Manual had not been conducted from five to eight years before the accident at issue occurred.
 

 Constructive notice can be found to exist when “the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.”
 
 Joseph,
 
 03-1996, p. 9, 842 So.2d at 426 (citing
 
 Maldonado v. Louisiana Superdome Comm’n,
 
 95-2490, p. 7 (La.App. 4 Cir. 1/22/97), 687 So.2d 1087, 1092). The City cannot demonstrate that the district court was clearly wrong in finding that the City had constructive knowledge of the push up defect that should have been discovered during the course of annual street inspections because it ignored its own policies regarding street inspection for years. This assignment of error is without merit.
 

 The City’s second assignment of error, that the district court erred in failing to find any comparative fault on the part of Mrs. Murphy, is also without merit. | ¡Determinations and allocations of comparative fault made by the district court are not disturbed by this court in the absence on manifest error or unless the district court was clearly wrong.
 
 Dupree v. City of New Orleans,
 
 1999-3651, n. 13 (La.8/31/00), 765 So.2d 1002, 1015. The City has not proven that the district court committed manifest error or was clearly wrong.
 

 The City avers that Mrs. Murphy bears some responsibility for not crossing Decatur St. at the corner, not viewing the road for obstacles, and not exercising proper caution considering her history of falls. The district court explained in its Reasons for Judgment that Mrs. Murphy observed the condition of Decatur St. before stepping down from the curb and then focused her attention on traffic. The district court further noted that the Louisiana Supreme Court has held that “[pjedestrians ‘cannot be expected to constantly look down while walking on a busy street ... ’ ”
 
 Bessard v.
 
 
 *962
 

 State Dept. of Transportation and Development,
 
 94 0589 (La.11/30/94), 645 So.2d 1134, 1137. We agree with the district court that Mrs. Murphy “acted as a reasonably prudent pedestrian, and is guilty of no comparative fault” when she redirected “her attention to the traffic conditions as she entered the traveled portion of the street.”
 

 Mrs. Murphy was jaywalking at the time of her accident. Jaywalking is defined as being in “[t]he act or instance of crossing a street without heeding traffic regulations, as by crossing between intersections or at a place other than a crosswalk.”
 
 Black’s Law Dictionary,
 
 Ninth Edition 2009. Jaywalking is a risky activity; however, the jaywalking pedestrian assumes a traffic risk, not a defective | instreet risk, by crossing the street without the protection and direction of any signage and lights in the area. Thus, the district court’s judgment finding no comparative fault is neither manifestly erroneous nor clearly wrong even though a different trier of fact may have reached an opposing conclusion under the facts presented. This assignment of error is without merit.
 

 DECREE
 

 For the foregoing reasons, the Judgment of the district court is amended to reflect that the total amount of damages awarded to Diana Murphy is $999,173.99 and the judgment of the district court is affirmed as amended.
 

 AMENDED, AND AFFIRMED AS AMENDED.
 

 [1]
 

 . The City defines a push up as a bump of asphalt likely pushed up by the repeated stopping of public transit buses in the same place.
 

 [2]
 

 . The district court did not explain how Mrs. Murphy demonstrated that the defect at issue created an unreasonable risk of harm in its Reasons for Judgment.