997 So.2d 578 (2008)
Gary L. FARMER, Plaintiff-Appellant,
v.
PATRICIAN SLP, L.L.C., d/b/a Spring Lake Point Apartments and Steadfast Insurance Company, Defendants-Appellees.
No. 43,601-CA.
Court of Appeal of Louisiana, Second Circuit.
October 1, 2008.
*580 L. Havard Scott, III, for Appellant.
Stephens & Robicheaux by Temple A. Stephens, Metairie, Carl W. Robicheaux, Kristen B. Menard, for Appellees.
Before GASKINS, PEATROSS & DREW, JJ.
PEATROSS, J.
Plaintiff, Gary L. Farmer, was injured while on the property of Defendants, Patrician SLP, L.L.C., d/b/a Spring Lake Point Apartments, and Steadfast Insurance Company. Defendants stipulated liability. After a trial on damages, the jury awarded Plaintiff a total of $329,500. Plaintiff appeals, seeking an increase in damages. For the reasons set forth herein, we amend the judgment and, as amended, we affirm.

FACTS
In September 2005, Plaintiff was visiting his son at his apartment owned by Defendant Patrician SLP. L.L.C., d/b/a Spring *581 Lake Point Apartments, which is insured by Defendant Steadfast Insurance Company. Plaintiff was injured when a defective railing on the second floor balcony gave way causing Plaintiff to fall over fifteen feet. Plaintiff's injuries included crushed wrist fractures, a shortening of the radius bone in both arms, a nerve compression at the left elbow, a widened mediastinum, which is a sign of a chest injury, and an aggravation of two of his spine joints in the neck. Plaintiff's injuries, particularly his broken wrists, required multiple surgeries to treat. At the time of the injury, Plaintiff was 52 years old, worked as a car salesmen and had two adult sons.
Defendants stipulated pretrial that they were 100% liable for Plaintiff's injuries. A jury trial was held on the sole issue of damages. The jury awarded Plaintiff $39,000 for past medical expenses; $50,000 for future medical expenses; $75,000 for pain, suffering and mental anguish, past and future; $12,500 for loss of quality and enjoyment of life, past and future; and $153,000 for loss of income and/or earning capacity. The total award was $329,500.
Plaintiff filed a Motion for New Trial/Judgment Notwithstanding the Verdict (JNOV) seeking an increase in damages. The trial court denied the motion. This appeal ensued.

DISCUSSION

General Damages
Plaintiff argues that the jury award of $75,000 for general damages, listed as pain, suffering and mental anguish, past and future on the jury form, is abusively low.
General damages are those which may not be fixed with pecuniary exactitude; instead, they involve "mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms." Bellard v. American Cent. Ins. Co., 07-1335 (La.4/18/08), 980 So.2d 654; Kaiser v. Hardin, 06-2092 (La.4/11/07), 953 So.2d 802; Duncan v. Kansas City Railway Co., 00-0066 (La. 10/30/00), 773 So.2d 670. In the assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion is left to the judge or jury. La. C.C. art. 2324.1; Duncan, supra. The role of the appellate court in reviewing awards of general damages is not to decide what it considers an appropriate award, but rather to review the exercise of discretion of the trier of fact. Id.; Youn v. Maritime Overseas Corp., 92-3017 (La.9/3/93), 623 So.2d 1257, cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The initial inquiry is whether the trier of fact abused its vast discretion in assessing the amount of damages. Duncan, supra. Only after finding that the trier of fact abused its great discretion may the appellate court resort to prior awards, and then only to determine the highest or lowest point reasonably within that discretion. Duncan, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). An abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. Locke v. Young, 42,703 (La.App.2d Cir. 12/12/07), 973 So.2d 831.
Plaintiff suffered a severe injury to his wrists. Both of Plaintiff's treating physicians testified that they would consider his injury a 7-8 on a scale of 1-10 with 10 being the most severe injury. His radius bone, the larger bone in the forearm, was broken into six to eight fragments of bone on his left side and more than ten fragments *582 on his right. The x-ray images and artist rendering of the injuries illustrate that both of Plaintiff's radius bones had multiple fractures at the end where the bones meet the hand. Plaintiff's doctors testified that the illustrations were accurate and the treating hand specialist also testified that the injuries were actually more severe because it resulted in the shortening of the radius bones in both hands.
Treatment included a metal plate being pinned to Plaintiff's left radius bone and an external fixator attached to his right hand. The metal plate was eventually removed because it started to cause Plaintiff problems. The external fixator required pins to be drilled into Plaintiff's hand bones and arm bones, which protruded from Plaintiff's skin. A metal frame was attached to the pins to stabilize the fracture.
Even after the external fixator and the metal plate were removed, Plaintiff testified that he continued to have pain in both hands and continued to wear braces, particularly on his right hand, to reduce the pain. At trial, he testified that the pain was ongoing. Plaintiff also developed a pinched nerve in his left elbow from resting on his elbows as a result of wearing the braces. Both of Plaintiff's physicians testified that in the future he will probably develop post-traumatic osteoarthritis in his wrists. They further testified that he is a candidate for wrist fusion surgery in future. This surgery would likely reduce his pain but would eliminate all wrist flexion.
After the accident, he moved in with his parents and continued to live with them at the time of the trial. During his initial recovery, Plaintiff was unable to perform even the basic tasks necessary to take care of himself and had to rely on his elderly parents to care for him. The testimony established that, for a period of several months, Plaintiff was unable to drive himself and had to rely on his parents, sons or friends to drive him to doctor appointments or anywhere he needed to go. Plaintiff testified that he eventually was able to drive himself around through the use of his left hand and knees. Plaintiff testified that he continues to have pain in his wrist and has limited function. In addition, Plaintiff's witnesses described him as becoming depressed and "negative" as a result of his injuries and his inability to care for himself.
From our review of the record, we find that the general damages award of $75,000 is abusively low. As such, we then turn to a review of prior cases to determine what is the lowest reasonable amount that could have been awarded.
We recently reviewed a damage award for a bilateral hand injury in Rice v. Liles, 38,840 (La.App.2d Cir.9/24/04), 882 So.2d 751. The defendant performed the wrong surgery on both hands of the plaintiff. As a result, the plaintiff was unable to use either hand and unable to do basic tasks. The plaintiff recovered some function in her left hand after a second surgery, but continued to be limited in her activities. The plaintiff was elderly and died from unrelated causes two years after the incorrectly performed surgery. This court lowered the general damages award for the plaintiff to $150,000. Further, in Cazes v. Parish of West Baton Rouge, 97-2824 (La. App. 1 Cir. 12/30/98), 744 So.2d 54, the plaintiff suffered a single wrist injury, which resulted in 15 weeks of total immobilization and limited function. The court concluded that $100,000 for general damages was not excessive.
While no two injuries are the same and the effects on the injured person vary greatly, we find that, under this precedent, the lowest amount the trier of fact could have reasonably granted is $200,000. As *583 described above, Plaintiff underwent extensive treatments for his fractures and was unable to use either hand for a number of months. He continues to live with pain in both hands and has only limited function in his hands. We, therefore, increase the award for general damages to $200,000.

Loss of Enjoyment of Life
Loss of enjoyment of life, sometimes known as hedonic damages, refers to the detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed. Locke, supra. Loss of enjoyment of life is conceptually distinct from other components of general damages, including pain and suffering. Pain and suffering, both physical and mental, refer to the pain, discomfort, inconvenience, anguish and emotional trauma that accompany an injury. Id. Loss of enjoyment of life, in comparison, refers to detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed prior to the injury. McGee v. A C and S, Inc., 05-1036 (La.7/10/06), 933 So.2d 770. In contrast to pain and suffering, whether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury. Id.
Before the accident, Plaintiff enjoyed hunting, fishing, hiking, water skiing and snow skiing and was a generally active person, according to his testimony and the testimony of his family. He often enjoyed these activities with his two adult sons, with whom he enjoyed a close relationship. Plaintiff testified that he can no longer enjoy any of these activities because of the pain and the limited dexterity of his hands. Defendants argue that the effect of the injuries on these activities is minimal because Plaintiff can fish with a cane pole and hunt with a tripod. We reject this argument because we do not believe the alternatives are comparable.
In addition, Plaintiff and his family testified that, as a result of his injury, he cannot fully interact with his grandson. His grandson was three months old at the time of trial. According to the testimony at trial, Plaintiff could not lift the baby or care for him without assistance. This prevented Plaintiff from babysitting except for very short times with the baby strapped into his baby swing.
At the hearing on the Motion for New Trial and Judgment JNOV, the trial court described the award of $12,500 for loss of enjoyment of life as "very, very, very low" and "almost shockingly low." While the trial court did not raise the award, we agree with its assessment of the low award of damages and find that the jury abused its discretion. Accordingly, we raise the award for loss of enjoyment of life to $100,000. Compare with Locke, supra, (loss of enjoyment of life award reduced to $200,000 for previously active 22-year-old) and Rivere v. Union Pacific Railroad Co., 93,1132 (La.App. 1st Cir.10/7/94), 647 So.2d 1140, writ denied, 95-0292 (La.3/24/95), 651 So.2d 295, ($75,000 for 22-year-old with permanent partial disability that significantly affected his lifestyle).

Lost Income and Earning Capacity
Plaintiff argues that the award of $153,000 for loss of income and/or earning capacity is inadequate and should be increased by this court. The discretion of the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages. Locke, surpa; Greenhead Gun Club, L.L.C. v. City of Shreveport, 40,045 (La.App.2d Cir. 10/12/05), 914 So.2d 62. The jury's determination of the amount, if any, of an *584 award of damages is a finding of fact and is subject to the manifest error/clearly wrong standard of review. Ryan v. Zurich American Inc. Co., 07-2312 (La.7/1/08), 988 So.2d 214.
A plaintiff bears the burden of proving his claim for lost earnings. Locke, supra. For purposes of determining this type of damages, the amount of lost earnings need not be proved with mathematical certainty, but by such proof as reasonably establishes the claim. Lewis v. State Farm Ins. Co., 41,527 (La.App.2d Cir.12/27/06), 946 So.2d 708. To recover for actual lost wages, a plaintiff must prove positively that he or she would have been earning wages but for the accident in question. Id.
Lost earning capacity is loss of a person's potential and is not necessarily determined by actual loss. Johnson v. LSU Medical Center, 38,204 (La.App.2d Cir.3/3/04), 867 So.2d 884, writ denied, 04-0890 (La.6/4/04), 876 So.2d 88; Gorton v. Ouachita Parish Police Jury, 35,432 (La. App.2d Cir.4/3/02), 814 So.2d 95, writs denied, 02-1273 (La.8/30/02), 823 So.2d 950 and 02-1261 (La.8/30/02), 823 So.2d 952. To ascertain whether a personal injury plaintiff should recover for lost earning capacity, the trial court should consider whether and how much the plaintiffs current condition disadvantages the plaintiff in the work force. Johnson, supra. Among the factors to be considered are his physical condition before and after the injury, his age and life expectancy, the amount the plaintiff probably would have earned had he not been injured and the probability that he would have continued to earn wages for the balance of his life. Johnson, supra.
Since awards for future lost income are inherently speculative and intrinsically insusceptible of being calculated with mathematical certainty, the courts must exercise sound judicial discretion to determine these awards. Lewis, supra. The awards should be consistent with the record and not work a hardship on either party. Robbins v. State ex rel. Dept. of Labor, 31,590 (La.App.2d Cir.2/24/99), 728 So.2d 991.
Credibility determinations, including the evaluation of expert testimony, are factual issues to be resolved by the trier of fact. Johnson, supra. Where the testimony conflicts, the fact finder's reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review, even where the appellate court may feel that its own evaluations and inferences are more reasonable than those of the jury. Quinn v. Wal-Mart Stores, Inc., 34,280 (La.App.2d Cir.12/6/00), 774 So.2d 1093, writ denied, 01-0026 (La.3/9/01), 786 So.2d 735.
In the case sub judice, Plaintiff contends that the amount awarded for lost earnings reflects that the jury implicitly found him to be totally and permanently disabled. He bases this argument on the jury award of $153,000, which is equal to his annualized income of $15,938 for his last year of employment in 2005 multiplied by his 9.6 years of work life expectancy at the time of trial. In addition, Plaintiff submits that the jury found him totally disabled because it awarded the entirety of his past and future medical expenses; this indicates that the jury accepted that his past medical care was necessary and that he would need future medical care, specifically dual wrist fusions, in the future. We cannot accept this interpretation.
While the argument that the jury reached the amount awarded for lost income by the formula described above appears reasonable, we cannot conclude that it found Plaintiff totally disabled. The jury may have simply considered the sum of $153,000 as sufficient for Plaintiff's entire past and future lost earnings. Moreover, the record supports that the jury *585 would have been reasonable in finding that Plaintiff was not totally disabled.
Defendants played a surveillance tape for the jury taken two weeks before trial. On the tape, Plaintiff was seen driving around town stopping numerous places. He was seen unlocking his car door with his key in his right hand, opening the door with his right hand and then closing with his left. He was seen carrying a box of diapers, at times holding it with just one hand. While the surveillance could not see into his car to see the manner in which he was driving, the tape did show that he drove in a smooth and steady manner, even while turning. While Plaintiff attempted to explain his activities as limited, it is not unreasonable for the jury to have concluded that, based on the surveillance, Plaintiff would be able to obtain some type of employment.
Plaintiff's occupation expert testified that, due to Plaintiff's limited use of his upper extremities, he could not perform any jobs at the time of trial. Defendant's vocational rehabilitation expert, however, testified that employment was available in the area that Plaintiff could perform in his condition that paid $8-$8.50 an hour up to $25-$30 at hour. The jury appears to have accepted the conclusions of Defendants' expert over those of Plaintiff's expert, which is their prerogative. See Ryan, supra.
In addition, the jury's award of the total requested future medical expenses should not be taken to imply that they considered Plaintiff totally disabled. While both of Plaintiff's doctors testified that it was likely that Plaintiff would have to undergo a fusion of both wrists and that the surgery would eliminate any bending of the wrist, they also testified that such a procedure would likely reduce his pain. One doctor testified that he had patients with wrist fusions who are able to perform heavy work.
We cannot find, therefore, that the jury abused its discretion in awarding Plaintiff $153,000 for loss of income and/or earning capacity and we affirm that portion of the judgment.
Plaintiff also appeals the trial court's denial of his Motion for New Trial or JNOV. The above discussions of the jury awards, however, preempt addressing this assignment of error and we, therefore, decline to do so.

CONCLUSION
For the reasons set forth above, we amend the judgment of the trial court. We increase the award in favor of Plaintiff, Gary L. Farmer, for pain, suffering and mental anguish, past and future to $200,000 and increase the award for loss of enjoyment of life to $100,000. We affirm the judgment in all other respects. Costs of the appeal are divided equally between Plaintiff and Defendants, Patrician SLP, L.L.C., d/b/a Spring Lake Point Apartments, and Steadfast Insurance Company.
AMENDED AND, AS AMENDED, AFFIRMED.