MOORE, J.
| ¿The City of Shreveport appeals a judgment of $338,581 arising from a trip and fall on a buckled city sidewalk. For the reasons expressed, we affirm.

Factual Background

Marion Williams was taking an exercise walk with her friend and coworker Tracy Terry on the morning of May 4, 2006. Although they had been walking together for months — the 50-year-old Ms. Williams proudly testified that she had lost 35 lbs. and was controlling her diabetes — they had never walked the sidewalk on the east side of Line Avenue just south of 73rd Street. Both acknowledged that many sidewalks in that neighborhood, the Cedar Grove area, were “messed up,” so they had to be careful.
As they were passing a rent house at 7313 Line Ave., with Ms. Williams slightly in front of Ms. Terry, somebody driving down Line Ave. honked a horn at them. Ms. Williams turned her head and waved; and then, noticing people sitting on the front porch of the house, she looked at them and waved. Before she could look straight ahead, she stumbled on a buckle in the concrete sidewalk, fell forward and landed on her hands, fracturing her right wrist.
Ms. Williams testified that she returned to the scene later that day and photographed the sidewalk.[1] The pictures show a fairly pronounced buckle, apparently due to root growth, between two strain relief grooves, with additional cracking at the crest of the buckle and where the segment joins a driveway. Both Ms. Williams and Ms. Terry admitted there were no leaves, vegetation or other debris obstructing their view, and they maintained that they watched where they were going. They insisted, however, that the photos were taken from the front yard or from the street and accentuated the condition; from their position, looking straight ahead, the defect was not noticeable.
As a result of the fall, Ms. Williams sustained a comminuted fracture of her right wrist. Her orthopedic surgeon, Dr. Webb, performed an ORIF (open reduction, internal fixation) surgery, implanting a plate and six pins that will remain in her wrist permanently; he advised her to keep moving her fingers to|savoid stiffness. Six months later, she developed numbness in that hand, which Dr. Webb diagnosed as carpal tunnel syndrome and attributed to the fall. He performed a carpal tunnel release which he deemed a success, but she still complained of pain on the thumb-side of her wrist. Dr. Webb diagnosed this as arthritis, which he also attributed to the fall, stating that people with a broken joint have a much greater chance of developing arthritis. He added that this was likely to get worse over time.

*538
Procedural History

Ms. Williams filed this suit against Ruben Residential Properties, owner of the rent house at 7313 Line Ave., and the City of Shreveport, which had garde of the sidewalk.[2] Early in the proceedings, Ms. Williams dismissed Ruben, reserving her rights against the city.
The city filed a motion for summary judgment, urging it was required to provide a sidewalk that was reasonably safe, not in perfect condition; that the city had no actual or constructive notice of this sidewalk’s condition; and that the city was not liable for an open and obvious hazard which should have been observed by anyone in the exercise of reasonable care. In support, the city attached a portion of the deposition of its superintendent of Streets and Drainage, Ernie Negrete, who stated that the city does not perform routine inspections of all its streets and sidewalks, as that would be a prohibitive undertaking; instead, it relies on calls from citizens (normally 6,000 calls annually) and takes action from there. He examined the call records and could not find that anyone had ever reported this patch of sidewalk. He added that Line Ave. south of 70th Street is actually a state highway, so city workers would not have performed recent repairs to the street or been present to notice any problems in the sidewalk.
Ms. Williams filed a cross motion for partial summary judgment, urging that the sidewalk posed an unreasonable risk of harm of which the city did indeed have actual or constructive notice. In addition to her own affidavit and the photos, she attached Mr. Negrete’s complete deposition, in which he admitted that this buckle must have existed for some time. He also attached the deposition of Mr. Ruben, the property owner, who said that the |4crack had been there since the state repaired Line Ave. some 15 years earlier.
The district court denied the city’s motion for summary judgment but granted Ms. Williams’s, citing Mr. Ruben’s deposition to find that the crack had been present so long that constructive knowledge of the defect could be inferred. The court commented that the city could still prove comparative fault and “that she should have seen it.” The city appealed this ruling, but this court dismissed the appeal as arising from an uncertified partial final judgment, La. C.C.P. art. 1915 B.
The matter proceeded to trial in February 2010 before a different judge.[3] The city argued in limine that the ruling on the motion for summary judgment was not law of the case, but the court resolutely refused to “undo” the other judge’s ruling. Ms. Williams testified as outlined above. She admitted that about two years before this accident, she slipped and fell at work at Home Depot, injured her hand and had an operation to release the resulting trigger finger; however, she maintained this had fully healed before she tripped on the sidewalk. She described her slow and difficult recovery, two surgeries, six weeks of physical therapy, medications that gave her nausea, and pain that even four years after the accident still ranges between a “3” on good days and a “7 or 8” on bad days. Although she still has her job at Home Depot, she mentioned various things *539 she can no longer do at work, home and play.
Ms. Williams’s husband, Maurice, testified that he went to the scene later on the day of the accident, and when he walked the sidewalk he could not see the buckle until he was right in front of it. Ms. Terry corroborated the events of the accident, stressing that like Ms. Williams she could not see the bump in the sidewalk from her vantage point. Dr. Webb, the surgeon, described Ms. Williams’s two operations and each office visit, stating his view that her carpal tunnel syndrome and arthritis were caused by the accident. Finally, Ms. Williams introduced certified copies of her medical records and summaries of her medical expenses and wage loss.
|fiThe city called no witnesses, relying solely on cross-examination of Ms. Williams’s witnesses, and offered into evidence only copies of the photos taken by Ms. Williams shortly after the accident.
The court ruled from the bench that Ms. Williams was extremely credible and to be commended for working through pain; it awarded her lost wages of $7,400. It then found that she suffered mental anguish, adverse effects on her life, and pain and suffering that were likely to continue; citing Farmer v. Patrician SLP, LLC, 43,601 (La.App. 2 Cir. 10/1/08), 997 So.2d 578, writs denied, 2008-2606, -2613 (La.1/9/09), 998 So.2d 724, 725,[4] it awarded general damages of $300,000. Finally, it accepted both women’s assertions that they simply could not see the defect in the sidewalk, noting that the side-view photos did not show what pedestrians would see; and because “it’s not a low-crime area,” Ms. Williams acted reasonably in turning back to look at the car that honked at her. The court therefore assessed no comparative fault. With medical expenses of $31,181.16, the court rendered judgment for the total of $338,581.16.
The city has appealed, raising three assignments of error.

Discussion: Open and Obvious Defect

By its first assignment of error, the city urges the court committed manifest error in failing to find that the defect in the sidewalk was open and obvious. The city cites Eisenhardt v. Snook, 2008-1287 (La.3/1/09), 8 So.3d 541: “[Defendants generally have no duty to protect against an open and obvious hazard. * * *A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner.” The city also quotes Ms. Williams’s and Ms. Terry’s admissions that there was nothing to obstruct their view of the sidewalk ahead of them. It submits that a more open and obvious condition would be hard to imagine, and suggests that if the photos are inadequate to depict the full measure of the defect, that is Ms. Williams’s fault, as she took them. The city also argues that even if the condition was not open and obvious | Benough to negate the city’s liability under Eisenhardt, then Ms. Williams should be assessed with comparative fault of 80%.[5]
Ms. Williams responds that the city produced no evidence whatsoever that the *540 sidewalk was open and obvious; instead of arguing that her photos are inadequate, the city could have taken its own photos. She also shows that three witnesses — herself, her husband and her walking partner — -all testified that they could not see the buckle from down the sidewalk, and the city offered no witness to contradict them. She concludes that the court’s finding of a hidden defect was not plainly wrong. As for comparative fault, she argues that it is not fault for a pedestrian to react to traffic conditions by looking away from the street momentarily, Murphy v. City of New Orleans, 2009-0567 (La.App. 4 Cir. 11/12/09), 25 So.3d 956, and no one is required to “constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle.” Boddie v. State, 27,313 (La.App. 2 Cir. 9/27/95), 661 So.2d 617, and citations therein.
A landowner owes a duty to a plaintiff to discover any unreasonably dangerous condition, and either to correct the condition or warn of its existence. La. C.C. art. 2317; Eisenhardt v. Snook, supra; Socorro v. City of New Orleans, 579 So.2d 931 (La.1991). In the recent case of Eisenhardt, the court elaborated (with citations omitted):
Nonetheless, we have recognized that defendants generally have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner. It is the court’s obligation to decide which risks are unreasonable based upon the facts and circumstances of each case.
 The appellate court may not set aside a district court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Id.; Stobart v. State, 617 So.2d 880 (La.1993). On review, an appellate court must be cautious not to reweigh the evidence or to substitute its own factual findings just because it would have decided the case differently. Eisenhardt v. Snook, supra, and citations therein.
We are aware that on a paved surface such as a sidewalk or a parking lot, the supreme court has held that a vertical height differential of 1/4 to 1/2 inch is not an unreasonable risk of harm. Boyle v. Board of Supervisors, 96-1158 (La.1/14/97), 685 So.2d 1080; Reed v. Wal-Mart Stores, 97-1174 (La.3/4/98), 708 So.2d 362. This court has also affirmed that a trip hazard of “less than two inches” in a sidewalk is not unreasonable. Graham v. City of Shreveport, 44,944 (La.App. 2 Cir. 1/27/10), 31 So.3d 526. The photos introduced in this case show a fairly prominent buckle and crack in one of the sidewalk panels, and no ruler or measuring tape was placed in the frame for reference. Thus we cannot discern exactly how high the crest of the buckle is; it may be greater than 1/2 inch. We note, however, that all the photos (except for one) are taken from a position in the street or in the front yard, and the side view tends to accentuate the crest. The one remaining photo was taken from the driveway at about a 30° angle to the sidewalk, and in this the crest is less apparent, resembling mostly cracks in the pavement. Three witnesses testified that from the vantage point straight down the sidewalk, the crest was simply *541 not apparent. Notably, the city offered no evidence as to the height of the crest or whether it was obvious to a person using the sidewalk; apparently, the city simply fixed the buckle. From this evidence, the court was entitled to find that the condition was not open and obvious to a person walking straight down the sidewalk in the exercise of reasonable care.
A pedestrian has a duty to see what should be seen and is bound to observe whether the pathway is clear. Hutchinson v. Knights of Columbus, 2008-1583 (La.2/20/04), 866 So.2d 228; Moore v. Oak Meadows Apts., 43,620 (La.App. 2 Cir. 10/22/08), 997 So.2d 594. However, pedestrians are not required to scrutinize the pavement for irregularities. Boddie v. State, supra. Moreover, it is reasonable for a pedestrian to react to traffic conditions by looking at vehicles instead of at the pavement. Bessard v. State, 94-0589 (La.l 1/30/94), 645 So.2d 1134; Murphy v. City of New Orleans, supra. The record shows that Ms. Williams was momentarily distracted by a passing car that honked a horn. Noting that Cedar Grove is “not a low-crime area,” the district court found that Ms. Williams acted reasonably in looking for the car, waving at it, and then waving at people sitting on the nearby porch. We perceive no manifest error in the finding absolving her of comparative fault.
This assignment of error lacks merit.

Actual or Constructive Notice

By its second assignment of error, the city urges the court committed manifest error in finding that the city had actual or constructive notice of the condition, as required by La. R.S. 9:2800. The city shows that no witness established that any accident had ever occurred on that sidewalk, and Ms. Williams’s attorney stipulated that nobody had ever reported its condition. As for constructive notice, the city cites Mr. Negrete’s testimony that the city does not conduct regular inspections of all its streets, sidewalks and signs, as this would be too costly; instead, it relies on citizen reports. It distinguishes Hammons v. City of Tallulah, 30,091 (La.App. 2 Cir. 12/10/97), 705 So.2d 276, writs denied, 98-0407, -0440 (La.3/27/98), 716 So.2d 892, 894, as a case in which there was evidence that city employees had performed work near, and thus should have noticed, the protruding guy wire anchor that caused the plaintiff to trip. The city submits there was no such evidence in this case.
Ms. Williams responds that the finding of constructive notice was the “easiest determination of this whole case,” in that the city offered evidence to negate only actual notice. She cites Mr. Ruben’s testimony that the buckle had been present for at least 15 years, when the state repaired Line Ave.; criticizes the city for having no regular inspection procedure; and suggests that street crews, garbage collectors and water meter readers must have noticed this buckle over the years.
A public entity is responsible for damages caused by the condition of buildings within its care and custody. La. C.C. art. 2317; La. R.S. 9:2800 A. However, the plaintiff making such a claim must prove that the public entity had “actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a treasonable opportunity to remedy the defect and has failed to do so.” La. R.S. 9:2800 C. Constructive notice is defined by La. R.S. 9:2800 D as the existence of facts which imply actual knowledge. The public entity is not required to conduct regular inspections of its property, so the absence of an inspection procedure does not confer constructive knowledge of *542 defects in its streets, signs and sidewalks. Jones v. Hawkins, 98-1259 (La.3/19/99), 731 So.2d 216; Murphy v. City of New Orleans, supra. Ordinarily, to prove constructive notice, plaintiffs must show that the defect causing the injury existed over a sufficient length of time to establish that reasonable diligence would have led to its discovery and repair. Smithwick v. City of Farmerville, 45,362 (La.App. 2 Cir. 6/23/10), 42 So.3d 1039, writ denied, 2010-2013 (La.11/12/10), 49 So.3d 888; Murphy v. City of New Orleans, supra. The district court’s findings under R.S. 9:2800 are subject to manifest error review. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566; Ricks v. City of Shreveport, 42,675 (La.App. 2 Cir. 10/24/97), 968 So.2d 863.[6]
The city correctly shows that the absence of a plan to conduct regular inspections of its streets and sidewalks does not show or imply that any employee of the city knew or should have known of the of defects. Jones v. Hawkins, supra. Mr. Ruben testified that the state repaired Line Ave. some 15 years before this accident, but he did not say that city employees participated in the project or were near enough to notice the problem with this sidewalk; this distinguishes the case from Hammons v. City of Tallulah, supra. Moreover, the mere presence of roots under a sidewalk does not create a clear inference that the problem has existed for a long time. Graham v. City of Shreveport, supra.
The decisive evidence, however, was the elderly Mr. Ruben’s remark that he had “walked that street as a little boy and that hump was there”; he agreed that the “crack has probably been there for as long as we’ve known.” Also, the photos show significant wear or erosion at the crest of the buckle and the edge of the pavement. This is proof of a longstanding condition not present in Graham v. City of Shreveport, supra. Mr. Negrete confirmed that | inthe city had in fact done street work only three blocks north of this location on two prior occasions, and he personally recalled working on a tar spill, about 16 years earlier, on the same block as the accident occurred.
In light of the fact that this buckle had been there for many years, and that the city performed road work near it, the district court was not plainly wrong to find that city employees should have noticed the condition in the exercise of their normal functions. We cannot say the district court was manifestly erroneous. This assignment lacks merit.

General Damages

By its third assignment of error, the city urges the district court abused its discretion in awarding $338,581.16. Specifically, it contests the general damages of $300,000. It concedes the court’s vast discretion under La. C.C. art. 2324.1. Kaiser v. Hardin, 2006-2092 (La.4/11/07), 953 So.2d 802. However, it argues that Ms. Williams’s carpal tunnel syndrome and arthritis did not manifest themselves until many months after, and cannot be considered results of, the accident. It also argues that even for an injury with these complications, the award is way out of proportion to the norm for a broken wrist. It suggests that an award of $25,000 would be much more appropriate, as in the simi *543 lar case of Wheelis v. CGU Ins., 35,230 (La.App. 2 Cir. 12/7/01), 803 So.2d 365. It prays for judgment reducing the general damages to that amount.[7]
Ms. Williams responds that the city offered no expert testimony to dispute Dr. Webb’s finding of medical causation. She also cites a number of cases involving broken wrists (and other serious injuries) that resulted in general damages ranging from $150,000 to $400,000. She particularly argues that Farmer v. Patrician SLP, supra, resulted in general damages of $200,000 and supports the instant award. She urges complete affirmance.
General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty. Duncan v. Kansas City So. Ry. Co., 2000-0066 (La.10/30/00), 773 So.2d 670. In the assessment of damages for offenses, quasi offenses and quasi contracts, much discretion |nmust be left to the judge or jury. La. C.C. art. 2324.1. The standard of review for an award of general damages is abuse of discretion. Guillory v. Lee, 2009-0075 (La.6/26/09), 16 So.3d 1104, and citations therein. The trial court is afforded much discretion in fixing general damages because of its superior position to evaluate the witnesses’ credibility and see the evidence firsthand. Id. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award but to review the exercise of discretion of the trial court. Id. Only if a review of the facts reveals an abuse of discretion should the appellate court resort to a review of prior, similar awards. Id. When such a comparison is warranted, the appellate court may not enter what it deems to be the most appropriate award but may only adjust the award by raising it to the lowest or lowering it to the highest within the trial court’s discretion. Id.; Coco v. Winston Industries, 341 So.2d 332 (La.1977).
At the outset, we find no merit to the city’s claim that Ms. Williams failed to prove that her carpal tunnel syndrome and arthritis resulted from this accident. Admittedly, Dr. Webb testified that Ms. Williams did not report symptoms of carpal tunnel syndrome until over five months after the accident, and that contrary to earlier medical opinion, he now believes that this condition usually results not from repetitive stress but from a single traumatic event. However, he firmly testified that the fall on the sidewalk caused Ms. Williams’s carpal tunnel syndrome and arthritis, and the city offered no contrary evidence. On this record, we cannot say the district court was plainly wrong in accepting Dr. Webb’s opinion.
While the general damages are quite high, we are- unable to find an abuse of the court’s vast discretion. Admittedly, Ms. Williams missed only three weeks’ work and sustained relatively modest medical expenses of $31,181; Dr. Webb felt the carpal tunnel release was a success, ran no X-rays to confirm the arthritis, and assigned no disability rating. The city also shows that the plaintiff in Farmer v. Patrician SLP, supra, fell from a 15-foot balcony, breaking both arms and wrists, resulting in virtual helplessness and permanent pain, and that other reported cases involved hideous collisions, multiple injuries and high disability ratings.[8]
[ ^Nonetheless, Dr. Webb described an especially complicated fracture of the dis *544 tal radius and ulna, with multiple fragments along the articulating surface, a surgery to implant significant hardware, another surgery to repair the carpal tunnel, pain that she “can just live” with, and the prospect of future surgery to immobilize the wrist. Although she kept her job, Ms. Williams described having to tuck her hand in her apron to keep customers from bumping or brushing it; also, she had increased pain when moving appliances or using a box cutter. At home, she has trouble opening lids and uncapping pop bottles, and even though she wears a wrist brace, the pain and burning in her wrist often wake her at night. Because of a preexisting heart condition, she cannot use any pain medications other than Tylenol and Aspercreme. Her husband confirmed that the pain often brings her to tears, and because of her stiff, painful wrist, she can no longer enjoy fishing and squirrel hunting. The district court adequately articulated Ms. Williams’s condition to support the award, which presses the upper limit of the discretionary range. The city’s assignment of error lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed. Pursuant to La. R.S. 13:5112, the city is also to pay filing fees of $146.50 that were waived when it took this appeal.
AFFIRMED.

. The photos are actually digitally dated "5 8 '06,” four days after the accident.

. The jurisprudence frequently uses the French word garde to express the concept of "custody, with legal responsibility for it care of keeping” in cases of liability under La. C.C. arts. 2317 and 2317.1. Loescher v. Parr, 324 So.2d 441 (La. 1975), and citations therein.

. Judge Fred C. Sexton, ad hoc, had ruled on the motions for summary judgment; Judge Roy L. Brun heard the trial on the merits.

. In Farmer, the same district court judge had awarded general damages of $75,000 to a plaintiff who fell from a second-floor balcony, crushing both wrists and sustaining a host of other arm and back injuries. On appeal, this court found the award abusively low and raised it to $200,000.

. The city actually raises the claim of comparative fault in its third assignment of error, which contests general damages, but the argument is more logically connected to the issue of liability.

. Strictly speaking, the finding of constructive notice arose by the grant of Ms. Williams's motion for partial summary judgment, a ruling ordinarily subject to de novo review. Hogg v. Chevron USA, 2009-2632 (La.7/6/10), 45 So.3d 991. However, after a trial on the merits, the appellate court is required to review the entire record for manifest error, not just the limited summary judgment evidence. Hopkins v. American Cyanamid Co., 95-1088 (La. 1/16/96), 666 So.2d 615.

. The city also argues that damages should be reduced for comparative fault, which it suggests was 80%. For the reasons already discussed, we find no manifest error in the court’s refusal to assess comparative fault.

. See, e.g., Williams v. Exxon Corp., 541 So.2d 910 (La.App. 1 Cir.), writ denied, 542 So.2d *544 1379 (1989) ($604,000 in globo award); Simms v. Progressive Ins. Co., 38,804 (La.App. 2 Cir. 9/29/04), 883 So.2d 473, writ denied, 2004-2871 (La. 1/28/05), 893 So.2d 78 ($435,-000 award); Rivere v. Union Pacific R. Co., 93-1132 (La.App. 1 Cir. 10/7/94), 647 So.2d 1140, writ denied, 95-0292 (La.3/24/95), 651 So.2d 295 ($400,000 award); Stephens v. Town of Jonesboro, 25,715 (La.App. 2 Cir. 8/19/94), 642 So.2d 274, writ denied, 94-2351 (La. 11/29/94), 646 So.2d 400 ($300,000 award); Holloway v. Midland Risk Ins. Co., 36,262 (La.App. 2 Cir. 10/30/02), 832 So.2d 1004, writ denied, 2002-3247 (La.3/28/03), 840 So.2d 571 ($275,000 award).