GASKINS, J.
 

 |, Plaintiff, Cordaryl Smith, sued the City of Shreveport, Shreveport Police Department, Chief Mike Campbell, Officer J.M. White, Officer K.W. Duck, and other unnamed officers (collectively referred to herein as “the City”) for injuries he allegedly sustained during his apprehension and arrest by Officers White and Duck. Following a bench trial, the trial judge ruled in favor of Smith, awarded general damages in the amount of $10,000 and special damages in the amount of $400.93. The trial judge then apportioned fault, allocating 51 percent of the fault to the officers and 49 percent of the fault to Smith. After allocation, the award to Smith totaled $5,851.43, with judicial interest. Expert witness fees were assessed to the City and costs were split according to the allocation of fault. Smith appeals. For the reasons stated herein, we affirm.
 

 FACTS
 

 On June 25, 2005, at approximately 1:50 a.m., Officers White and Duck, who were patrolling the Allendale neighborhood in separate vehicles, observed Smith walking in the street in the 1800 block of Abbie Street. There are no sidewalks on the 1800 block of Abbie Street. Smith, who was 18 years old at the time of the incident, had walked his girlfriend a portion of the way home and was returning to his grandmother’s residence on Abbie Street. As Smith was approaching the intersection of Abbie and Norma Streets, he was confronted by Officers White and Duck. The officers testified that they stopped Smith because it was a “good stop for a Terry 12stop.”
 
 [1]
 
 According to the officers, Smith was walking “unsteady on his feet” as if he may have been intoxicated, and he was not walking on the provided sidewalk. The record reflects that Smith stopped momentarily in front of the patrol car, but then fled. The officers chased Smith on foot. Smith ran across several yards and hid underneath the steps of his grandmother’s house at 1920 Abbie Street. As officers approached and ordered Smith out from under the steps, Smith ran again and attempted to jump over a cyclone fence.
 
 *499
 
 Either the fence collapsed or Smith became tangled in the fence; in any event, Smith fell and the officers apprehended him on the ground and were able to handcuff him. Smith testified that one officer held him down with his knee in his back and handcuffed him while the second officer beat him in the head with an object he could not identify. The officers both testified that reasonable force was used to make the arrest and denied that either of them hit Smith.
 

 Apparently, Smith was bleeding from the cut over his eye and the officers called for medical assistance. The Shreveport Fire Department responded to the non-emergency call for treatment. The EMS report reflects that Smith “jumped over a fence and fell” sustaining a small laceration over his left eye, which the paramedics cleaned and bandaged.
 

 Smith was transported to the city jail and charged with violating the municipal ordinance prohibiting pedestrians from walking in a street where a sidewalk is provided, as set forth in the City of Shreveport Municipal |sCode Sec. 90-462. He was also charged with resisting an officer in violation of La. R.S. 14:108. Both charges were later dismissed by the city prosecutor.
 

 Smith’s grandmother posted bond and took him to the emergency room at Willis-Knighton Medical Center for medical treatment. The Willis-Knighton medical records reflect that Smith suffered a superficial 1/4-inch laceration to his upper left eyelid, superficial abrasions on his right wrist, hand and palm areas, injury to a finger and a contusion to his left shoulder. “Vague discomfort” of the shoulder was noted, with no swelling and full range of motion. No fractures or dislocations were seen. The records further reflect that Smith advised the treating physician at the emergency room that he was apprehended by police and hit in the head with an object. The nurses’ notes reveal that, when asked what the object was, Smith responded, “I don’t know,” at which time the “family member” with Smith stated that “it was a police stick.” Smith was treated and released with instructions to take Motrin for pain and to apply ice to the shoulder. Subsequently, on July 11, 2005, Smith was treated at Wee Care Pediatric and Kidmed Clinic for headaches, the injury to his finger and continued shoulder pain. The Wee Care record states that Smith “fell when jumped over fence [and] fell onto shoulder [and] hand during a police encounter.” Again, Motrin was prescribed for pain. Smith testified that the pain in his shoulder lasted approximately three months.
 

 As previously stated, Smith filed suit against the City, alleging unlawful arrest, use of excessive and unnecessary force, malicious violation |4of and interference with Smith’s constitutional rights, infliction of injuries, intentional infliction of emotional distress, assault and battery, gross negligence, inhumane treatment, and cruel and unusual punishment. Some of the plaintiffs claims were based upon state law and others were based on federal law found in 42 U.S.C. §§ 1988 and 1988. Cross motions for summary judgment were filed by the parties resulting in dismissal of all federal and state claims except for the state claims of excessive force, assault and battery, wrongful arrest, and intentional infliction of emotional distress. Bench trial of the matter was held on July 22, 2010. As previously stated, judgment was rendered finding the officers at fault and awarding Smith damages in the amount of $10,400.93, subject to the apportionment of fault of 49 percent to Smith. Costs were allocated between the parties and expert witness fees were ordered to be
 
 *500
 
 paid by the City. This appeal by Smith ensued.
 

 DISCUSSION
 

 On appeal, Smith claims that the trial court committed manifest error in its allocation of fault to Smith when it is clear that the actions of Officer White and Officer Duck were the cause-in-fact of the incident, that the trial court erred in failing to determine the extent of the force used by the officers, and that the trial court erred in limiting its award of general and special damages to $10,400.93 for false arrest and battery. Smith also argues that the trial court erred in not awarding attorney fees for violation of his constitutional rights.
 

 15As an initial matter, we note that the trial judge heard the testimony of all witnesses and reviewed the medical and documentary evidence, after which he provided exhaustively thorough and well-reasoned written reasons for judgment and supplemental reasons for judgment. Enumerated factual and legal conclusions were provided supporting the trial judge’s proper finding that the officers were at fault in this case and that finding is not before us on appeal. Rather, Smith challenges the trial judge’s allocation to him of 49 percent of the fault, the judge’s failure to specify the extent of the force used by the officers, and amount of general damages awarded.
 

 Louisiana courts of appeal apply the manifest error standard of review in civil cases.
 
 Detraz v. Lee,
 
 2005-1268 (La.1/17/07), 950 So.2d 557;
 
 Hall v. Folger Coffee Company,
 
 2003-1734 (La.4/14/4), 874 So.2d 90. The trial court’s findings of fact may not be set aside on appeal unless clearly wrong or manifestly erroneous.
 
 Rabalais v. Nash,
 
 2006-0999 (La.3/9/07), 952 So.2d 653;
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989). This is so even where the court of appeal is convinced that it would have weighed the evidence differently and reached a different result.
 
 Rabalais v. Nash, supra; Blair v. Tynes,
 
 621 So.2d 591 (La.1993). The issue to be resolved is not whether the trier of fact was right or wrong, but whether its factual conclusions were reasonable.
 
 Rabalais v. Nash, supra.
 
 Where there are two permissible views of the evidence, the fact finder’s choice cannot be manifestly erroneous or clearly wrong.
 
 Stobart v. State through Department of Transportation and Development,
 
 617 So.2d 880 (La.1993).
 

 |
 
 ^Allocation of Fault
 

 Both the existence of negligence and the allocation of fault are factual determinations subject to the trial court’s great discretion.
 
 Easter v. Direct Insurance Company,
 
 42,178 (La.App.2d Cir.5/9/07), 957 So.2d 323. As to the allocation of fault, the trier of fact is bound to consider the nature of each party’s wrongful conduct and the extent of the causal relationship between that conduct and the damages claimed.
 
 Watson v. State Farm Fire and Casualty Insurance Co.,
 
 469 So.2d 967 (La.1985);
 
 Fontenot v. Patterson Insurance,
 
 2009-0669 (La.10/20/09), 23 So.3d 259. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.
 
 Watson v. State Farm Fire and Casualty Insurance Co., supra.
 

 An appellate court must give great deference to the allocation of fault as determined by the trier of fact. The alio-
 
 *501
 
 cation of fault is not an exact science or the search for one precise ratio, but, rather, an acceptable range; and any allocation by the fact finder within that range cannot be clearly wrong.
 
 Fontenot v. Patterson Insurance, supra.
 
 Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the award.
 
 Fontenot v. Patterson Insurance, supra; Schysm v. Boyd,
 
 45,886 (La.App.2d Cir.8/16/10), 47 So.3d 977,
 
 writ denied,
 
 2010-2113 (La.11/19/10), 49 So.3d 390.
 

 After reviewing the testimony and the written reasons for judgment, we conclude that the findings of fault against the officers and Smith were not clearly wrong. As correctly noted in the trial judge’s supplemental written reasons for judgment, there is no right to resist an unlawful stop- and-frisk. See
 
 State v. Sims,
 
 2002-2208 (La.6/27/03), 851 So.2d 1039. While we recognize Smith’s stated reason for fleeing, that he was scared and “knows what polices do,” he was not justified in running from the officers. Smith actually ran twice, when first confronted and when ordered out from under the steps. In fact, Smith might have successfully eluded the officers had he not fallen over the cyclone fence. Smith must have known that fleeing from the officers would result in a chase and potentially injurious apprehension. Smith’s actions cannot be condoned and were a significant contributing factor to his injuries.
 

 In addition, the trial judge carefully articulated his basis for making credibility determinations regarding both the officers’ testimony and Smith’s purported version of events. For example, in his testimony, Smith emphatically denied the confrontation with the fence as a possible cause of his injuries. As previously stated, he testified that one officer jumped on his back and held him down, wrenching his arms back to handcuff him while the second officer hit him in the face/head with an unknown object. The EMS report states, however, that Smith was trying to jump a fence and fell on his shoulder and cut his eye. Likewise, the Wee Care medical chart |8reflects that the history provided by Smith was that he fell over a fence and landed on his shoulder during a police encounter. In addition, Smith was not truthful in his reporting of employment for purposes of determining his pauper status. On the other hand, portions of the officers’ testimony were inconsistent including testimony that Smith was unsteady and staggering and testimony that he was standing upright and straight. Further, the officers’ stated purpose for stopping Smith was his failure to walk on the provided sidewalk, except that there was no sidewalk on that portion of the street. Finally, we note that the trial judge did take notice of the fact that one of the officers was much larger than Smith and that both officers were physically involved in subduing Smith once he was lying face down on the ground.
 

 In summary, we believe that the trial judge carefully considered the unique and somewhat troubling circumstances of this encounter and made appropriate and reasonable factual findings and credibility calls. In consideration of the deference owed the trier of fact in its allocation of fault, we do not find that the trial judge’s apportionment of fault, 51 percent to the officers and 49 percent to Smith, was manifestly erroneous. This finding is reasonably supported by the record.
 

 Extent of Force and Damages
 

 Smith argues that the trial judge erred by not specifically determining the extent of the force used by the officers against Smith. Smith further argues that the post-allocation of fault award of
 
 *502
 
 $5,351.43, together with his share of the costs, is abusively low. We disagree.
 

 | ^General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty.
 
 Duncan v. Kansas City Southern Railway Co.,
 
 2000-0066 (La.10/30/00), 773 So.2d 670. In the assessment of damages for offenses, quasi offenses and quasi contracts, much discretion must be left to the judge or jury. La. C.C. art. 2324.1. The standard of review for an award of general damages is abuse of discretion. The trial court is afforded much discretion in fixing general damages because of its superior position to evaluate the witnesses’ credibility and see the evidence firsthand. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award but to review the exercise of discretion of the trial court. Only if a review of the facts reveals an abuse of discretion should the appellate court resort to a review of prior, similar awards. When such a comparison is warranted, the appellate court may not enter what it deems to be the most appropriate award but may only adjust the award by raising it to the lowest or lowering it to the highest within the trial court’s discretion.
 
 Williams v. Ruben Residential Properties, LLC,
 
 46,040 (La.App.2d Cir.3/2/11), 58 So.3d 534, and cases cited therein.
 

 In the case
 
 sub judice,
 
 the trial judge examined the EMS report, the immediate treatment required for Smith’s injuries, the emergency room records of Willis-Knighton and the report from the subsequent physician visit to Wee Care. The laceration to Smith’s upper eyelid was 1/4 inch and superficial, requiring antibiotic ointment and a bandage. His shoulder was bruised and sore, with no swelling and full range of motion. Smith testified | inthat his discomfort lasted approximately three months. There was no evidence presented of lost wages, loss of enjoyment of life, impairment of Smith’s daily activities or any stress/mental injuries whatsoever. Indeed there was only one follow-up visit to a physician and Motrin was ordered until the pain resolved. We find no abuse of discretion in the trial judge’s award of $10,000 in general damages.
 

 Next, we find no merit in Smith’s assertion that the trial judge erred by failing to specifically determine the extent of force used by the officers. The reasons for judgment indicate that the trial judge undertook a studied evaluation of this case, including the physical actions of the officers against Smith and the parties’ respective credibility issues surrounding the testimony of how the encounter happened and the roles of the parties involved. The damage award adequately reflects the finding of the trial judge that excessive force was used against Smith and the lack of any further particularization in this regard is not reversible error.
 

 Attorney Fees
 

 In his final assignment of error, Smith asserts that the trial judge erred in refusing to award attorney fees due to the alleged constitutional violations and his claims under 42 U.S.C. §§ 1983 and 1988. However, all federal claims in this case were dismissed on summary judgment on March 5, 2009. That ruling was not appealed. Smith’s claim for attorney fees has no merit and is, therefore, denied.
 

 | n CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court awarding damages in the amount of $10,400.93, subject to the apportionment of fault of 51 percent to Officers K.W. Duck and J.M. White and 49 percent to Cordaryl Smith, and allocating the costs in the same proportions, is affirmed.
 
 *503
 
 Costs of appeal are assessed to Cordaryl Smith.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held that an officer may stop a person with less than probable cause for arrest if he has specific and articula-ble facts to suspect criminal activity and may frisk the person if he reasonably believes the person is armed and dangerous.